John E. Lord (SBN 216111)
Email: jlord@onellp.com
**ONE LLP**
9301 Wilshire Blvd.
Penthouse Suite
Beverly Hills, CA 90210
Telephone: (310) 866-5157
Facsimile: (310) 943-2085

Amanda G. Hyland (admitted *pro hac vice*)
Email: ahyland@taylorenglish.com
Seth K. Trimble (admitted *pro hac vice*)
Email: strimble@taylorenglish.com
**TAYLOR ENGLISH DUMA LLP**
1600 Parkwood Circle, Suite 200
Atlanta, GA  30339
Telephone: (770) 434-6868
Facsimile: (770) 434-7376

*Counsel for Defendant*
*Alien Visions E-Juice, Inc.*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIKE SARIEDDINE, an individual,<br><br>Plaintiff,<br><br>v.<br><br>ALIEN VISIONS E-JUICE, INC., a California corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:18-cv-3658-PA-MAA<br>Hon. Percy Anderson<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT ALIEN VISIONS E-JUICE, INC.'S MOTION FOR SUMMARY JUDGMENT**<br><br><br><br>Date: April 15, 2019<br>Time: 1:30 p.m.<br>Courtroom: 9A |
| AND RELATED COUNTERCLAIMS | Complaint Filed: May 1, 2018 |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SUMMARY JUDGEMENT**

01423876-11

## TABLE OF CONTENTS

I. INTRODUCTION ...........................................................................................1

II. FACTUAL BACKGROUND ........................................................................2

    A. Alien Visions' Historic Use and Market Penetration ..........................2

    B. Sarieddine's Alleged Early Use .........................................................7

    C. Sarieddine's Trademark Lawsuits......................................................10

III. ARGUMENT ...............................................................................................11

    A. Sarieddine must show earlier use date by clear and convincing evidence...............................................................................................11

    B. Sarieddine's alleged early sales do not create priority. .....................13

    C. Alien Visions achieved market penetration prior to Sarieddine's trademark registration. ........................................................................16

    D. Sarieddine's first registration should be cancelled because he falsely attested that he was using the mark at the time he applied for registration. ......................................................................................18

    E. The "Unlawful Business" claim fails..................................................20

IV. CONCLUSION .............................................................................................23

Appendix A.......................................................................................................24

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SUMMARY JUDGEMENT**

01423876-11

# TABLE OF AUTHORITIES

## CASES

Adray v. Adry-Mart, Inc.,
76 F.3d 984 (9th Cir. 1995) ............................................................................. 17

*Allard Enters. v. Advanced Programming Res., Inc.*,
249 F.3d 564 (6th Cir. 2001) ........................................................................... 12

*AOP Ventures, Inc. v. Steam Distribution, LLC*,
No. 15-cv-1586-VAP (KKx), 2016 U.S. Dist. LEXIS 193035 (C.D.
Cal. Oct. 11, 2016) ..................................................................................... 14, 15

*Brookfield Commc'n, Inc. v. W. Coast Entm't Corp.*,
174 F.3d 1036 (9th Cir. 1999) .................................................................. 13, 16

*Cantu v. Resolution Trust Corp.*,
4 Cal. App. 4th 857 (1992) ............................................................................. 21

Champions Golf Club v. Champions Golf Club,
78 F.3d 1111 (6th Cir. 1996) .......................................................................... 17

*Chance v. Pac-Tel Teletrac Inc.*,
242 F.3d 1151 (9th Cir. 2001) .................................................................. 13, 15

*Clorox Co. v. Salazar*,
108 USPQ2d 1083 (TTAB 2013) .................................................................... 20

*Dep't of Parks & Rec. v. Bazaar Del Mundo, Inc.*,
448 F.3d 1118 (9th Cir. 2006) ........................................................................ 13

*Elder Mfg. Co. v. Int'l Shoe Co.*,
194 F.2d 114 (CCPA 1952) ............................................................................. 12

*Feitelberg v. Credit Suisse First Boston, LLC*,
134 Cal. App. 4th 997 (2005) ......................................................................... 22

Glow Indus. v. Lopez,
252 F. Supp. 2d 962 (C.D. Cal. 2002) ............................................................ 17

Golden Door, Inc. v. Odisho,
437 F. Supp. 956 (N.D. Cal. 1977) ................................................................. 17

*Hydro-Dynamics, Inc. v. George Putnam & Co.*,
811 F.2d 1470 (Fed. Cir. 1987) ...................................................................... 12

*Jaffe v. Simon & Schuster, Inc.*,
1987 U.S. Dist. LEXIS 14902 (S.D.N.Y. Feb. 3, 1987) ................................. 15

*Korea Supply Co. v. Lockheed Martin Corp.*,
29 Cal. 4th 1134 (2003) .................................................................................. 22

*Kwikset Corp. v. Superior Court*,
51 Cal. 4th 310 (2011) .................................................................................... 22

ii

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SUMMARY JUDGEMENT**

01423876-11

*Momentum Luggage & Leisure Bags v. Jansport, Inc.*,
 No. 00-cv-7909, 2001 U.S. Dist. LEXIS 10253 (S.D.N.Y. July 23,
 2001) ............................................................................................................... 15

*Network Automation, Inc. v. Advanced Sys. Concepts*,
 638 F.3d 1137 (9th Cir. 2011) ...................................................................... 11

*Paramount Pictures Corp. v. White*,
 31 USPQ2d 1768 (TTAB 1994) .................................................................... 19

*Pettitt v. Levy,*
 28 Cal. App. 3d 484 (1972) ........................................................................... 21

*Rearden LLC v. Rearden Commerce, Inc.*,
 683 F.3d 1190 (9th Cir. 2012) ................................................................ 13, 15

*Rosenthal v. Irell & Manella,*
 135 Cal. App. 3d 121 (1982) ......................................................................... 21

*Sengoku Works Ltd. v. RMC Int'l, Ltd.*,
 96 F.3d 1217 (9th Cir. 1996) .................................................................. 11, 12

*ShutEmDown Sports Inc. v. Lacy*,
 102 USPQ2d 1036 (TTAB 2012) .................................................................. 20

*Silberg v. Anderson,*
 50 Cal. 3d 205 (1990) .................................................................................... 21

*Stanspec Co. v. American Chain & Cable Co.*,
 531 F.2d 563 (CCPA 1976) ........................................................................... 12

*Vesta Corp. v. Amdocs Mgmt.*,
 No. 3:14-cv-001142-HZ, 2018 U.S. Dist. LEXIS 16326 (D. Or.
 Feb. 1, 2018) ................................................................................................... 22

*Wine Grp., LLC v. L. & R. Wine Co.*,
 No. 2:10-cv-02204-MCE-KJN, 2012 U.S. Dist. LEXIS 128576
 (E.D. Cal. Sep. 7, 2012) ................................................................................. 14

*ZAZU Designs v. L'Oreal S.A.*,
 979 F.2d 499 (7th Cir. 1992) ......................................................................... 14

**STATUTES**

15 U.S.C. § 1051 ...................................................................................... 19, 20

15 U.S.C. § 1052 ............................................................................................ 16

15 U.S.C. § 1057 ............................................................................................ 12

15 U.S.C. § 1064 ...................................................................................... 16, 19

15 U.S.C. § 1115 ...................................................................................... 12, 17

15 U.S.C. § 1119 ...................................................................................... 16, 19

15 U.S.C. § 1127 ...................................................................................... 13, 19

iii

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SUMMARY JUDGEMENT**

01423876-11

California Civil Code section 47(b)......................................................................20

**OTHER AUTHORITIES**

California Business and Professions Code § 17200 ............................................20

California Business and Professions Code § 17500 ............................................20

Trademark Manual of Examining Procedure § 1609.07 .....................................20

Trademark Trial and Appeal Board Manual of Procedure ("TBMP") § 102.01 ...........................................................................................................19

**REGULATIONS**

37 C.F.R. §2.71(c)(1)...........................................................................................20

iv

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SUMMARY JUDGEMENT**

01423876-11

## I.     INTRODUCTION

In 2019, vaping is a fire-hot topic and a multibillion-dollar industry.  A decade ago, the word "vape" was known only to a few early adopters, and the industry was barely emerging. This case takes us back to those days – to the late 2000s when the vaping industry first began.

The defendant in this case, Alien Visions E-Juice, Inc. ("Alien Visions") was a pioneer in this industry. It was one of the first, and one of the most famous, early e-juice manufacturers. The company was started by Benjamin and Christiane LaBarre, both army veterans who were trying to quit smoking. They began selling e-juice under the mark ALIEN VISIONS in November 2009, and by April of 2014 had sold almost $4 million of product across the U.S.

It is unclear when Plaintiff Mike Sarieddine entered the e-juice market. There is no dispute that he made a handful of U.S. sales of e-juices under the mark ALIEN VAPE in 2015, increasing up to several dozen sales in 2016. What happened prior to that is unclear at best. Sarieddine claims that he sold vaping devices under the mark "ALIEN VAPE" since 2008. As will be detailed in this brief, his evidence of early sales appears to be invented, *but even if it were real,* such minimal sales are insufficient to create priority. What is very clear is that Sarieddine had absolutely no bona fide sales until *maybe* 2012, when his friend, a smoke shop distributor, says he drove Sarieddine's vaping pens around in a van and tried to sell them to vaping shops in Southern California. There are no records of these sales.

In May 2013, Sarieddine applied for a use-based trademark registration for a logo while he was in China trying to have some vaping pens manufactured. He admitted in his deposition that he had not yet used the mark at that time, and in fact, had created the logo on his computer while he was there. On April 22, 2014, the registration issued.

1

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SUMMARY JUDGEMENT**

By the end of 2016, Sarieddine still had virtually no U.S. sales of any product bearing the mark ALIEN VAPE, no evidence of any market penetration, and no customer base, but he did have a trademark registration. For the past two years, he has used this registration to terrorize the e-juice industry, filing seven lawsuits against 20 defendants, alleging every user of a mark using the term "alien" is infringing. Almost all of the defendants have settled because they could not justify the costs of defense. Alien Visions has held on, determined not to change its name after using it for nine years or pay "damages" to a company that entered the market about eight years after it. In this summary judgment motion, Alien Visions asks the Court to find that there is no issue of disputed fact as to its priority over Sarieddine. Accordingly, all of Sarieddine's federal and state infringement and unfair competition claims should be dismissed and his trademark registrations should be canceled.

## II.   FACTUAL BACKGROUND

### A. Alien Visions' Historic Use and Market Penetration

Christiane and Benjamin LaBarre met and married while serving in the Army. Statement of Uncontroverted Facts ("SOF") ¶ 1. They were both smokers, and had lost three of their parents to smoking-related illnesses. SOF ¶ 2. They had tried to quit smoking using a variety of gum, pills and patches, but they both finally quit for good in July 2009 when they switched to vaping. SOF ¶ 3. Vaping hardware and juices were not widely available then, especially in Korea where they were both living, so in September 2009, Mr. LaBarre started mixing his own vaping liquids, or "e-juice." SOF ¶ 4. With the encouragement of friends, Ben and Christiane started a business in November 2009 selling the e-juices he had formulated.[1] SOF ¶ 5.

From the first day, they sold the e-juices under the mark "ALIEN VISIONS E-JUICE." SOF ¶ 6.  They chose the name carefully. First, they noticed that "A" names

---

[1] Initially, they operated as a "DBA" but formally registered in Oklahoma in 2010. SOF ¶ 5.

2

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SUMMARY JUDGEMENT**

were listed first in the vaping forums and wanted an "A" name that would be prioritized online. SOF ¶ 7. They liked the word "Alien" because it was evocative of their expatriate status in Korea. SOF ¶ 8. "Visions" was chosen to reference the vision that was required to formulate good flavors. SOF ¶ 9.  On November 13, 2009, they registered the domain for avejuice.com. SOF ¶ 10. They decided on "avejuice" for the domain name because they thought "alien visions e-juice" was so long it might be mistyped in the address bar. SOF ¶ 11.

The LaBarres found themselves in an emerging market without any clear precedent on how or where to advertise. Just as tobacco products cannot be advertised in mainstream media, neither could e-cigarettes, and even Google refused to run ads for vaping products. SOF ¶ 12. In these early days, e-cigarette users flocked to online forums to learn more about e-cigarette products, which were hard to find in brick-and-mortar stores. SOF ¶ 13. Ben recognized that the best possible advertising was to meet these users where they congregated – on the forums. SOF ¶ 14. Beginning December 6, 2009, under the screenname "Porphy" and doing business as "Alien Visions E-Juice," he regularly promoted Alien Visions on e-cigarette-forum.com ("ECF"), the most popular vaping forum in the world, and nu-vapor.com. SOF ¶ 15. A review of just a portion of the ECF forum between 2009 and April 21, 2014[2] shows 990 posts by "Porphy" in which he was promoting Alien Visions. SOF ¶ 16. The marketing worked. Traffic poured into Alien Visions' website. Google analytics shows that by the end of 2013, the site had been visited more than 900,000 times by over 345,000 visitors. SOF ¶ 17. This data is summarized in Table 1 (SOF ¶ 18):

|          | 2009 | 2010   | 2011    | 2012    | 2013    | Totals  |
|----------|------|--------|---------|---------|---------|---------|
| Users    | 492  | 23,817 | 50,090  | 79,687  | 191,324 | 345,410 |
| Sessions | 800  | 55,643 | 134,420 | 212,811 | 502,328 | 906,002 |

[2] The end date for Alien Visions' relevant usage is April 21, 2014, as that is the last day before Sarieddine's trademark registration issued, as discussed below.

3

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SUMMARY JUDGEMENT**

01423876-11

Alien Visions also enjoyed a steady increase in sales, as shown in Table 2 below.

| Year | U.S. Sales | No. of Sales | CA Sales |
|---|---|---|---|
| **2010** | $124,084 | 3826 | $16,131 |
| **2011** | $508,225 | 13,144 | $66,069 |
| **2012** | $800,184 | 16,512 | $104,024 |
| **2013** | $1,683,170 | 31,735 | $218,812 |
| **01/1/14 – 04/21/14** | $683,963 | 13,173 | $88,915 |
| **Total** | $3,799,626 | 78,407 | $493,951 |

From 2009 until April 21, 2014, its nationwide sales numbered 78,407 and totaled $3.79 million. SOF ¶ 19-21.These sales included more than 21 distributor accounts. SOF ¶ 22. The sales data, including addresses, is compiled into the spreadsheet provided as Appendix B, and which is reflected in the below maps and in the animated map provided to the Court on a flash drive. SOF ¶ 23.



MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SUMMARY JUDGEMENT

01423876-11



During the early years of this emerging market, no sales data for the industry data is available. Indeed, all e-juice market reports begin in 2014 or later. SOF ¶ 24. Nonetheless, the number of e-cigarette users during 2011-2013 can be estimated by identifying the number of visitors to the ECF website, as this forum was the only major source for vaping information during that time, and nearly all serious e-cigarette users were actively visiting the site then. SOF ¶ 25. These ECF analytics can be compared with Alien Visions' visitors for the same market area. A sampling of results from 2012 is shown in Table 3:

| Metro Area | Alien Visions New Users | ECF New Users | Percentages |
|---|---|---|---|
| Los Angeles CA | 5583 | 149211 | 4% |
| Seattle-Tacoma WA | 1651 | 49190 | 3% |
| Houston TX | 1994 | 42428 | 5% |
| Tampa-St. Petersburg (Sarasota) FL | 1322 | 35477 | 4% |
| Denver CO | 1255 | 35374 | 4% |
| Raleigh-Durham (Fayetteville) NC | 953 | 24595 | 4% |
| Portland OR | 1018 | 23658 | 4% |

5

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SUMMARY JUDGEMENT**

01423876-11

| Pittsburgh PA | 790 | 21537 | 4% |
|---|---|---|---|
| Baltimore MD | 950 | 18667 | 5% |
| Cincinnati OH | 911 | 17228 | 5% |
| Birmingham (Ann and Tusc) AL | 515 | 8345 | 6% |
| Ft. Wayne IN | 214 | 3376 | 6% |

SOF ¶ 26. As can be seen in this table, in 2012 Alien Visions was receiving about 5% of ECF's traffic in all nationwide markets -- meaning that approximately 5% all e-cigarette in 2012 were visiting Alien Visions' website.

Anecdotal evidence also shows the popularity of Alien Visions during these early years. For example, YouTube users uploaded 45 video reviews of Alien Visons' products during those four-and-a-half years. SOF ¶ 27. A small sampling of the ECF forums also show *thousands* of posts about Alien Visions. SOF ¶ 28. Indeed, Alien Visions had its own site, or "subforum," within CMF forum exclusively dedicated to discussions about Alien Visions' products. SOF ¶ 29. Until April 21, 2014, that forum contained 12,489 individual posts, which were viewed *1.4 million times.* SOF ¶ 30. A cursory review of just a handful of these posts shows the cult-like status of Alien Visions:

> *"To most this juice needs no intro to other who have not had the privilege of trying it or have been under a rock and not heard of it yet, I thought I would enlighten you on this awesome juice."*

"Passerbyeus" on 07/25/2012 (SOF ¶ 31).

Similarly, when reviewing *just a sample* of posts referencing "Alien Visions" in another forum, NuVapor.com, its users published 3,649 times in posts relating to Alien Visions prior to April 22, 2014. SOF ¶ 32. As successful as the company has been, its workforce has remained tightly controlled, largely to ensure that only a few trusted employees have knowledge of the proprietary formulas. SOF ¶ 33. It has often employed just one or two people, and never more than nine. SOF ¶ 34.

6

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SUMMARY JUDGEMENT**

**B. Sarieddine's Alleged Early Use**

According to his original trademark application filed with the United States Patent and Trademark Office ("USPTO"), Sarieddine began selling e-cigarette vaporizers under the design mark "ALIEN VAPE. VAPE JUST GOT REAL!" at least as early as April 30, 2013. SOF ¶ 35. According to another USPTO trademark application, Sarieddine began selling e-cigarette vaporizers under the design mark "ALIEN VAPE" at least as early as April 15, 2013. SOF ¶ 36. These trademark applications matured into U.S. Registration No. 4997336 on July 12, 2016, and U.S. Registration No. 4517249 on April 22, 2014, respectively. SOF ¶ 37.

It was only after he was involved in trademark disputes in which he learned of other users of the term "ALIEN" that predated May 2013 that he started claiming ever-reversing first use dates, each new date in response to an allegation of a third party's earlier date.[3] SOF ¶ 38. After claiming *four* reversing use dates, he learned about the existence of Alien Visions and its 2009 launch, and then alleged a *fifth* first use date of 2008. SOF ¶ 39.

---

[3] In August 2016 Sarieddine was engaged in settlement communications with Big Bang Vape Co. ("Big Bang"), which would become the first of the 20 defendants. In those discussions, after being pointed to a March 2013 YouTube review of Big Bang's ALIEN PISS, he claimed a first use date of January 2013. SOF ¶ 39. In those same discussions, after learning of Big Bang's November 2012 first-use date, he reversed his date again, this time to June of 2012. *Id.* He initiated the Big Bang lawsuit in February 2017 and claimed June 2012 as his first-use date in the initial complaint. SOF ¶ 40. Three months later, on May 26, 2017, in a declaration supporting his motion for preliminary injunction in the Smok case, he claimed that his first use was in May 2011. SOF ¶ 41. In response to the motion, Smok's counsel presented evidence of earlier uses of the term "Alien" in the vaping industry in a filing on June 16, 2017. SOF ¶ 42. In response thereto, in a June 25, 2017, filing, Sarieddine *again* changed his first-use date, claiming in a declaration that he had used the mark since 2008. SOF ¶ 43. He later amended his complaint in January 2018 in Big Bang's case to allege first use in 2008. SOF ¶ 44.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SUMMARY JUDGEMENT**

01423876-11

Sarieddine cannot recall which manufacturer made the vaping pens he sold in 2008, and he has no record of communicating with the manufacturer, no record of ordering the pens, no record of paying for the pens, no memory of how many he ordered, no record of them being shipped to him, and no recollection of the revenue they generated. SOF ¶¶ 45-46. According to Sarieddine, he asked "a guy named Dave," a girl whose name he can't recall, and his friend Rami Chemaly to sell the pens. SOF ¶ 47. Sarieddine says Chemaly made sales of the pens to his friends in cash transactions. SOF ¶ 48. He recorded these sales in an invoice book which has now vanished, and for which no carbon copies have been retained. SOF ¶ 49. Miraculously, even though Chemaly did not keep the receipt book or the carbon copies, for some reason he photocopied a handful of early receipts that he held on to for a decade so that he could provide them to Sarieddine for purposes of this lawsuit. SOF ¶ 50. Of these early photocopies of receipts, only two are arguably admissible. These two receipts show the sale of $135 worth of vaping kits in December 2008.

The first alleged sale was made to Micah Davis on December 10, 2008. SOF ¶ 51. Davis testified that Chemaly was a friend or acquaintance who sold him the pen personally in Lancaster. SOF ¶ 52. He recalled no details regarding the pen or the sale except that he paid $100 for the pen. SOF ¶ 53. The second alleged sale was made to Harpreet Singh, also in Lancaster, on December 23, 2008, for $35. SOF ¶ 54. Singh said he bought one vape kit directly from Chemaly "as a friend." SOF ¶ 55.

Sarieddine has no admissible evidence of any other sales until June of 2012. Ali Hassan, a Sarieddine family friend, testified that he bought "ALIEN VAPE" branded vaping pens from Sarieddine sometime around June of 2012, and would then put the products in the back of his van and try to sell them to smoke shops in southern California. SOF ¶ 56. He has no records of any of these purported sales to smoke shops, nor is there any evidence that the smoke shops ever actually offered the products for sale. SOF ¶ 57. In other words, there is no evidence that a single end

8

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SUMMARY JUDGEMENT**

consumer was offered or purchased an ALIEN VAPE-branded pen as a result of Mr. Hassan's distribution of the products. The only evidence Sarieddine produced is one receipt showing that a sale was made to Hassan, which is from December 2012 for $460. SOF ¶ 58.

The next relevant event occurred in April 2013, when Sarieddine went to China to meet with a manufacturer of vaping hardware. SOF ¶ 59. At that time, he placed an order for about 5,000 hardware units. SOF ¶ 60. Sarieddine testified that during that trip, he came up with the "Vape Just Got Real" tagline and designed the alien head logo SOF ¶ 61. He also applied for the trademark for the alien head logo with the tagline himself while he was in China, on May 2, 2013. SOF ¶ 52. The vaping units that displayed this new logo and tagline were then manufactured and arrived for sale in the United States sometime thereafter. SOF ¶ 63.

From 2008 until the present date, Sarieddine has not produced anything that shows any advertising expenses that relate specifically to the United States. SOF ¶ 64. Although he claims having spent $100,000 in advertising, the expenses are not itemized and most appear to be related to international trade shows and a UK-based magazine. SOF ¶ 65. From 2008 until 2015, he could not identify any distributors of his product or any websites (other than his own) where it was sold. SOF ¶ 66. And while he has provided a list of distributors and documents regarding his revenues from 2015-2018, most of those sales were to foreign customers. SOF ¶ 67. In fact, of the $1 million in total income he reports during this timeframe, at least $908,917 of that income came from customers outside the United States. SOF ¶ 68.

After the two sales in 2008, from 2010-2015, *over a six-year period,* Sarieddine has provided evidence of only *21 orders* into the U.S. *See* Appendix A; SOF ¶ 69. In 2015, he has provided evidence that he shipped three orders into the U.S., and in 2016 he appears to have shipped *44 orders* into the U.S. SOF ¶ 70.

9

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SUMMARY JUDGEMENT**

## C. Sarieddine's Trademark Lawsuits

By early 2017, Sarieddine had fewer than 100 sales of his product into this country. In an apparent effort to find a better revenue stream, Sarieddine began filing trademark infringement lawsuits.[4] One of the first was against Shenzhen IVPS Technology Co., Ltd., a major Chinese manufacturer of vaping hardware doing business as "Smok." SOF ¶ 72. In that case, in their efforts to defend a motion for preliminary injunction, Smok's attorneys obtained evidence of third-party use of the term "alien" in the vaping industry. SOF ¶ 73. In so doing, they reached out to Alien Visions and spoke to its manager, Sam Ellinger, who agreed to sign a declaration stating that Alien Visions has been using the mark since at least 2010. SOF ¶ 74. Ellinger knew the company had been doing business since 2010 based on numerous conversations he had had with the LaBarres. SOF ¶ 75. Smok's lawyers drafted the declaration, and in it, the wording stated that it was based on Ellinger's "personal knowledge." SOF ¶ 76. Ellinger did not understand that phrase to have any particular meaning, and he signed the declaration as it was originally worded. SOF ¶ 77. The declaration was submitted to Judge Fischer in opposition to the motion for preliminary injunction. SOF ¶ 73. SOF ¶ 78. Judge Fischer denied the motion on other grounds and did not refer to the Ellinger declaration in her order. SOF ¶ 79.

After suing about 20 individual and companies over the next few months, Sarieddine eventually set his sights on Alien Visions and filed the present lawsuit. In

---

[4] In order of filing the cases are: *Sarieddine v. Big Bang Vape Co. LLC, et al.*, Case No. 2:17-cv-0989 (C.D. Cal.) (Fischer, J.) (Filed February 7, 2017); *Sarieddine v. D and A Distribution, LLC, et al.*, Case No. 2:17-cv-2390 (C.D. Cal.) (Fischer, J.) (Filed March 28, 2017); *Sarieddine v. Sonder LLC*, No. 2:17-cv-3779 (C.D. Cal.) (Fischer, J.) (Filed May 18, 2017); *Sarieddine v. Downtown Vapes LLC*, Case No. 2:18-cv-8342 (C.D. Cal.) (Anderson, J.) (Filed November 15, 2017); *Sarieddine v. Kenneth Andrews*, Case No. 2:18-cv-0077 (C.D. Cal.) (Fitzgerald, J.) (Filed January 4, 2018); *Sarieddine v. Alien Vapor Enterprises, LLC, et al.*, Case No. 2:18-cv-3297 (C.D. Cal.) (Snyder, J.) (Filed April 19, 2018); *Sarieddine v. Alien Visions E-Juice, Inc.*, Case No. 2:18-cv-3658 (C.D. Cal.) (Anderson, J.) (filed May 1, 2018). SOF ¶ 71.

10

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SUMMARY JUDGEMENT**

this case, he alleges that Alien Visions' use of its mark infringes on Sarieddine's trademark registration (Dkt. No. 1 Count One) and his common law rights (Counts Two and Four). He also alleges that Alien Visions is liable for unfair competition under state law due to Ellinger's declaration, which Sarieddine alleges is false because it stated that Ellinger provided it with his personal knowledge, when in actuality he had institutional knowledge. (Count Three).

## III.   ARGUMENT

Alien Visions can show, undisputedly, that it had significant market penetration throughout the country that began in late 2009 and continued to build each year thereafter, through and beyond Sarieddine's trademark registration date in April 2014. Sarieddine, on the other hand, can show only a handful of sales until 2017, with his early sales all too sporadic and unreliable to create any priority. Based on these undisputed facts, Sarieddine's infringement claims cannot succeed. For the same reasons, and based on Sarieddine's claim *in judico* that the marks conflict, his registrations must be canceled. Sarieddine's claim relating to Ellinger's declaration also fail for numerous reasons, including under California's litigation privilege.

### A. Sarieddine must show earlier use date by clear and convincing evidence

To prevail on his claims relating to trademark infringement, Sarieddine must prove: (1) that he has a protectable ownership interest in the mark; and (2) that Alien Visions' use of the mark is likely to cause consumer confusion. *Network Automation, Inc. v. Advanced Sys. Concepts*, 638 F.3d 1137, 1144 (9th Cir. 2011). "It is axiomatic in trademark law that the standard test of ownership is priority of use." *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996). "To acquire ownership of a trademark it is not enough [for Sarieddine] to have invented the mark first or even to have registered it first." *Id.* Sarieddine "must have been the first to actually use the mark in the sale of goods or services." *Id.*

11

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SUMMARY JUDGEMENT**

01423876-11

Here, Sarieddine's first use date claimed in his trademark applications is in May of 2013. In light of Alien Visions evidence of use beginning in 2009, Sarieddine has to show that he has legitimate, bona fide use not in April 2013 as he originally claimed, but more than four years prior to that. Moreover, "[w]here an applicant seeks to prove a date earlier than the date alleged in its application, a heavier burden has been imposed on the applicant than the common law burden of preponderance of the evidence." *Hydro-Dynamics, Inc. v. George Putnam & Co.*, 811 F.2d 1470 (Fed. Cir. 1987); *see also Rockwood Chocolate Co. v. Hoffman Candy Co.*, 372 F.2d 552, 554 (CCPA 1967) ("proof of such earlier date must be clear and convincing"); *Elder Mfg. Co. v. Int'l Shoe Co.*, 194 F.2d 114, 118 (CCPA 1952) (same). The reason for such an increased evidentiary burden, supported by common sense, is that a change of position from one "considered to have been made against interest at the time of filing of the application," *Stanspec Co. v. American Chain & Cable Co.*, 531 F.2d 563, 567 (CCPA 1976), requires enhanced substantiation. Thus, in this case, Sarieddine must show **by clear and convincing evidence** that his first use date was prior to April 2013.

Federal registration of a mark is prima facie evidence that the registrant is the owner of the mark. 15 U.S.C. § 1057(b); 15 U.S.C. § 1115(a). Therefore, Sarieddine is granted a presumption of ownership. *Sengoku*, 96 F.3d at 1219. Alien Visions can rebut this presumption "by showing that [Sarieddine] had not established valid ownership rights in the mark at the time of registration – in other words, if [Alien Visions] can show that [it] used the mark in commerce first, then [Sarieddine's] registration[s] may be invalidated." *Id.* at 1220; *see also Allard Enters. v. Advanced Programming Res., Inc.*, 249 F.3d 564, 572 (6th Cir. 2001) ("Federal registration of a trademark or service mark cannot create rights and priority over others who have previously used the mark in commerce."). "The first to use a mark is deemed the 'senior' user and has the right to enjoin 'junior' users from using confusingly similar marks in the same industry and market or within the senior user's natural zone of

12

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SUMMARY JUDGEMENT**

01423876-11

expansion." *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1047 (9th Cir. 1999). Sarieddine claims to be the "senior user" by virtue of Rami Chemaly's sale of $135 worth of vape kits in December 2008. This claim fails as a matter of law under *any* standard, and even more so when considering that he must prove the sales by a clear and convincing standard.

### B. Sarieddine's alleged early sales do not create priority.

"The Lanham Act grants trademark protection only to marks that are used to identify and to distinguish goods or services in commerce." *Brookfield*, 174 F.3d at 1051. The term "use in commerce" means "the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark." 15 U.S.C. § 1127. To determine whether Sarieddine's purported use of the mark constitutes use in commerce, the court should follow a "totality of the circumstances" approach, which turns on "evidence showing, first, adoption, and, second, use in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind" as those of the adopter of the mark. *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1205 (9th Cir. 2012) (quotations and citations omitted).[5] Sarieddine "cannot rely on a few instances of use of the marks in the distant past that were casual or had little importance apparently attached to them." *Dep't of Parks & Rec. v. Bazaar Del Mundo, Inc.*, 448 F.3d 1118, 1126 (9th Cir. 2006). To demonstrate priority of use, Sarieddine's "use must be bona fide and commercial in character." *Id.* It must also be more than "token" or *de minimis* use. *Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1157 (9th Cir. 2001); *AOP*

---

[5] *See also Brookfield*, 174 F.3d at 1051 (explaining that "[t]he purpose of a trademark is to help consumers identify the source, but a mark cannot serve a source-identifying function if the public has never seen the mark and thus is not meritorious of trademark protection until it is used in public in a manner that creates an association among consumers between the mark and the mark's owner.").

13

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SUMMARY JUDGEMENT**

*Ventures, Inc. v. Steam Distribution, LLC*, No. 15-cv-1586-VAP (KKx), 2016 U.S. Dist. LEXIS 193035, at *11 (C.D. Cal. Oct. 11, 2016).

Sarieddine's alleged sales in 2008, to the extent they actually took place, were token, *de minimis*, and insufficiently public to establish trademark rights. The only arguably admissible documentary evidence of such sales consists of photocopies of two handwritten receipts for $135 of vaping kits in December 2008. Both sales were purportedly made by Chemaly, Sarieddine's friend, to individuals Chemaly knew personally. Chemaly made the sales in-person, somewhere in Lancaster, for a total of $135 in cash. No advertising was made in connection with the sales, or otherwise to promote the mark during this time.

"Sales" of this nature are insufficiently public to establish priority in a mark. For example, in a case involving e-liquid for vaping products, this Court found that sales of two bottles to a friend and six bottles to someone "trying to help [the seller] out," made without any advertising during the relevant time period, were "too small, sporadic, and inconsequential to establish priority" in the mark at issue. *AOP Ventures*, 2016 U.S. Dist. LEXIS 193035, at *12-13 (quotation and citation omitted). Similarly, the Eastern District of California has held that evidence of wine sales to individuals from a single tasting room in Pennsylvania was "insufficient to establish that [defendant] created an association in the public's mind between [defendant] and the mark." *Wine Grp., LLC v. L. & R. Wine Co.*, No. 2:10-cv-02204-MCE-KJN, 2012 U.S. Dist. LEXIS 128576, at *59 (E.D. Cal. Sep. 7, 2012). The court in that case specifically noted that the alleged prior user "took no other action that would be consistent with establishing a link between its mark and the public's mind (e.g., advertising)." *Id; see also ZAZU Designs v. L'Oreal S.A.*, 979 F.2d 499, 503 (7th Cir. 1992) ("A few bottles [of hair coloring] sold over the counter in Hinsdale, and a few more mailed to friends in Texas and Florida, neither link the ZAZU mark with [plaintiff's] product in the minds of consumers nor put other producers on notice.");

14

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SUMMARY JUDGEMENT**

01423876-11

*Jaffe v. Simon & Schuster, Inc.*, 1987 U.S. Dist. LEXIS 14902, at *46 (S.D.N.Y. Feb. 3, 1987) (holding that "nominal or token sales to personal friends and relatives . . . do not constitute such a bona fide commercial operation as would entitle [the party] to claim ownership of the mark") (quotation and citation omitted).

So too here, Chemaly's two sales of a few vape kits to a friend and an acquaintance are insufficient to establish trademark rights, particularly when Sarieddine made no efforts to promote the mark to the consuming public through advertising. Making two sales, in-person, in the same city, to individuals known personally to the "salesman" falls far short of the kind of bona fide, commercial activities necessary "to identify or distinguish the marked goods in an appropriate segment of the public mind." *Rearden*, 683 F.3d at 1205. Indeed, the paucity of Chemaly's sales – a mere $135 worth of vape kits – is reason enough to deny Sarieddine senior user status. *See, e.g.*, *AOP Ventures*, 2016 U.S. Dist. LEXIS 193035, at *12-13 (holding that sales of eight bottles of e-juice was *di minimis* and insufficient to create trademark rights); *Momentum Luggage & Leisure Bags v. Jansport, Inc.*, No. 00-cv-7909, 2001 U.S. Dist. LEXIS 10253, at *16-17 (S.D.N.Y. July 23, 2001) (finding that one sale of six tote bags and two briefcases for total of $760 did "not constitute sufficient use of a trademark in commerce to qualify for Lanham Act protection"), *aff'd* 45 Fed. Appx 42 (2nd Cir. 2002). Moreover, under the totality of the circumstances, Sarieddine's failure to follow the December 2008 sales with any continuing effort to use the mark render him incapable of establishing priority of use. *See Chance*, 242 F.3d at 1160 (affirming summary judgment and concluding that plaintiff's use of mark in bulk mailing to 35,000 locksmiths was insufficient to establish priority where plaintiff "failed to come forward with sufficient evidence to establish a triable issue of fact that [his company] genuinely continued to exploit the mark thereafter").

15

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SUMMARY JUDGEMENT**

Accordingly, there can be no dispute that the two 2008 sales are insufficient for Sarieddine to show priority. Alien Visions' sales began in 2009 and increased swiftly thereafter. Accordingly, to the extent Sarieddine would like to rely on the testimony of Ali Hassan to create priority, those 2012 sales were too late in time to be relevant here. Nonetheless, *even those sales* were insufficiently public to count.

Hassan could not identify a single resale store that bought the "Alien Vape" pens, nor can he even identify the volume of sales he made to those stores. Thus, there is nothing in the record showing that a single, specific store offered the pens for sale or made such a sale, or that a single member of the public ever saw the mark "Alien Vape" on anything. Because use of a mark "is not meritorious of trademark protection until it is used in public in a manner that creates an association among consumers between the mark and the mark's owner," *Brookfield*, 174 F.3d at 1051, any purported use of the ALIEN VAPE mark by Mr. Hassan is insufficient to create prior trademark rights, even in 2012, for Sarieddine.

Thus, Sarieddine has not shown under *any standard,* let alone under a "clear and convincing" one, that his first use date precedes the date he used in his trademark application of May 2013. In fact, there is *nothing in the record* showing a bona fide sale to a disinterested, resale customer *ever* prior to Sarieddine's trademark application filing date.

**C. Alien Visions achieved market penetration prior to Sarieddine's trademark registration.**

Sarieddine's registrations, which issued on April 22, 2014, and April 26, 2016, respectively, both should be canceled because Alien Visions has priority. 15 U.S.C. § 1052(d), 15 U.S.C. § 1064, 15 U.S.C. § 1119 ("[A] registration may be canceled by the reviewing court where the registered mark resembles the "mark or trade name previously used in the United States by another and not abandoned."). Here, Sarieddine has admitted *in judico,* that he believes his marks and the "ALIEN

16

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SUMMARY JUDGEMENT**

VISIONS" mark are "highly similar" and infringing. SOF ¶ 81. There is no dispute of fact that by April of 2014, and on every other possible date over the last decade, Alien Visions had priority over Sarieddine by every conceivable metric, including sales, market penetration, advertising, and website traffic.

Sarieddine's oldest trademark registration issued on April 14, 2014. SOF ¶ 37. This registration created constructive notice of Sarieddine's claim of ownership of the mark, thereby precluding anyone else thereafter from claiming good faith, innocent use or expanded use of the same mark after the date of registration. 15 U.S.C. § 1115. This priority, however, is not absolute. The Lanham Act is clear that a user of the same mark is not infringing if that user adopted the mark before the registrant's application date. 15 U.S.C. § 1115(b)(5).

Market penetration is determined by: (1) the volume of sales with regard to the product at issue; (2) the positive and negative growth trends; (3) the number of people who purchased the party's goods in relation to the number of potential customers; and (4) the amount of advertising. *Adray v. Adry-Mart, Inc.*, 76 F.3d 984, 989 (9th Cir. 1995). "Where the trademark user has acquired a national reputation associated with its mark, it may assert trademark rights even in areas where it has no sales." *Glow Indus. v. Lopez*, 252 F. Supp. 2d 962, 983 (C.D. Cal. 2002) (citing *Champions Golf Club v. Champions Golf Club*, 78 F.3d 1111, 1124 (6th Cir. 1996); *Golden Door, Inc. v. Odisho*, 437 F. Supp. 956, 962 (N.D. Cal. 1977)).

Alien Visions has provided undisputed evidence that ***prior to April 22, 2014:***

- It had significant and increasing sales into every single metro area and every single state in the United States. See Appendix A, Appendix B and Maps.
- It sold $3.79 million worth of its products. See SOF ¶ 19, 21 and Table 2.
- Its founder promoted Alien Visions almost 1,000 times in the only significant marketing platform of the time. SOF ¶ 16.

17

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SUMMARY JUDGEMENT**

01423876-11

- Its website received more than 345,000 visitors in all 50 states who visited the site 906,000 times. SOF ¶ 17.

- Its website was visited by approximately 5% of all e-cigarette users nationally. SOF ¶ 23 and Table 3.

- The most popular forum of the time contained a special subforum for Alien Visions that contained 12,489 posts that were viewed 1.4 million times. SOF ¶¶ 29-30. Another popular forum contained more than 3,500 strings referencing Alien Visions. SOF ¶ 32.

Based on the foregoing, there is no dispute as to Alien Visions' sales and growth trends, its advertising, its market share, and its popularity, all prior to April 22, 2014. Accordingly, there is no issue of fact as to its market penetration prior to Sarieddine's earliest registration date. Alien Visions therefore cannot infringe Sarieddine's registration or any common law rights that Sarieddine purports to have generated based on near-nonexistent sales.

It also should be noted that, without a registration, the only geographic area where Sarieddine has shown any sales prior to 2017 is in California, where he has shown **less than ten sales** between 2010 and 2014. *See* Appendix A. During the same time period, Alien Visions has had 12,565 sales worth about $500,000 in California. *See* SOF ¶¶ 19-21 and Table 2 above. There can be no question that Sarieddine had not created any market penetration such that Alien Visions could infringe his common law rights in California, or anywhere.

**D. Sarieddine's first registration should be cancelled because he falsely attested that he was using the mark at the time he applied for registration.**

"In any action involving a registered mark the court may determine the right to registration, order the cancelation of registrations, in whole or in part, . . . and otherwise rectify the register with respect to the registrations of any party to the

18

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SUMMARY JUDGEMENT**

01423876-11

action." 15 U.S.C. § 1119.  Within five years of registration of a mark, an opposing party may raise any available statutory ground for opposition or cancellation that negates a trademark owner's right to registration. *See* 15 U.S.C. § 1064; Trademark Trial and Appeal Board Manual of Procedure § 102.01 and cases cited therein. The Sarieddine marks were registered on July 12, 2016, and April 22, 2014, so both marks are within the five-year timeframe.

Among many other potential grounds for cancellation, a registered mark may be canceled if there was no bona fide use of the mark in commerce prior to the filing of a use-based application for its registration under 15 U.S.C. § 1051(a). When filing a use-based application, the statement "shall be verified by the applicant and specify that . . . the mark is in use in commerce." 15 U.S.C. § 1051(a)(3)(c).  The term "use in commerce" is defined, in pertinent part, in 15 U.S.C. § 1127 to mean:

> … the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark. For purposes of this chapter, a mark shall be deemed to be in ***use in commerce***—
>
> (1) on goods when—
>
> (A) it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their ***sale***, and
>
> (B) the goods ***are sold or transported in commerce***….

*Id.* (emphasis added); *see also Paramount Pictures Corp. v. White*, 31 USPQ2d 1768, 1769 (TTAB 1994) ("use in commerce" involves the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark), *aff'd* 108 F.3d 1392 (Fed. Cir. 1997) (unpublished).

19

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SUMMARY JUDGEMENT**

Where the opposing party can show that the statement of use in commerce was false, the application is void and the mark should be canceled. *See, e.g., Clorox Co. v. Salazar*, 108 USPQ2d 1083, 1086-87 (TTAB 2013) (applicant's mark was not in use in commerce as of the filing date of the use-based application, and therefore the application was void *ab initio*); *ShutEmDown Sports Inc. v. Lacy*, 102 USPQ2d 1036 (TTAB 2012) (same). It is clear, moreover, that a false date of first use is ground for cancellation and not correction of the mark: "If the application for the registration was based on use in commerce under 15 U.S.C. §1051(a), the registration cannot be corrected to specify a date of use that is later than the application filing date (*see* 37 C.F.R. §2.71(c)(1))." Trademark Manual of Examining Procedure § 1609.07.

As discussed above, Sarieddine testified that, at the time he designed and applied for the "ALIEN VAPE. VAPE JUST GOT REAL!" mark, he was not using it in commerce on any product. SOF ¶¶ 62-64. However, when he applied for the trademark, he falsely verified that he *was* using the mark in commerce. If the information Sarieddine revealed during his testimony had been disclosed to the USPTO, the USPTO would not have granted his application for registration of the "ALIEN VAPE. VAPE JUST GOT REAL!" mark based on use in commerce. Thus, that registration should be canceled.

### E. The "Unlawful Business" claim fails.

Sarieddine claims that Alien Visions engaged in an unlawful business act under California Business and Professions Code § 17200 and California Business and Professions Code § 17500, *et seq.*, and common law (collectively, "UCL"), by "knowingly submitting a false declaration in another case in this district involving Plaintiff." This claim fails for many reasons.

First, the declaration of Sam Ellinger was protected as a privileged communication under California Civil Code section 47(b) and cannot be the basis for such a claim. "To effectuate its vital purposes, the litigation privilege is held to

20

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SUMMARY JUDGEMENT**

be absolute in nature." *Silberg v. Anderson,* 50 Cal. 3d 205, 215 (1990).  It applies to declarations alleged to be false, *Cantu v. Resolution Trust Corp.,* 4 Cal. App. 4th 857, 886 (1992), as here, and "is accorded not only to parties but to witnesses, even where their testimony is allegedly perjured and malicious." *Pettitt v. Levy,* 28 Cal. App. 3d 484, 488 (1972). The privilege applies to bar "all torts except malicious prosecution." *Silberg,* 50 Cal. 3d at 212.[6]  This alone defeats Sarieddine's claim.

Second, there is no evidence of any harm to Sarieddine caused by the declaration, much less any harm that is recoverable under the act. Sarieddine alleges that the declaration has "damaged Plaintiff by precluding Plaintiff from obtaining the injunction sought in Case No. 17-cv-2390 [Smok case]" (SOF ¶ 80).  However, in that case Judge Fischer based her Order denying the motion for preliminary injunction on Sarieddine's delay and resultant failure to meet his burden to show irreparable harm alone[7]; further, Judge Fischer added that the balance of equities and public interest favored denying Sarieddine's request.  *Id.* None of those rationales was based on, much less referenced, Ellinger's declaration.

In addition, the substantive statements in Ellinger's declaration are true (except that Alien Visions' first use of its mark was even *earlier* than Ellinger attested[8]).  In other words, and as shown above, Alien Visions' use of its mark *was*

---

[6] For example, actions found to have been barred by the privilege include intentional inducement of breach of contract (*Rosenthal v. Irell & Manella,* 135 Cal. App. 3d 121 (1982)), intentional interference with prospective economic advantage (*Id.*), and fraud and negligent misrepresentation (*Pettitt v. Levy, supra,* 28 Cal. App. 3d 484).

[7] "Nothing in the record excuses Sarieddine's delay for the two months between terminating the distribution term and filing the Complaint, or the two months between filing the Complaint and requesting a preliminary injunction." (Order at 8). "Because the contractual agreement and consumer complaints are undermined by Sarieddine's own conduct, the record contains insufficient evidence to support a finding that irreparable harm is likely to occur without injunctive relief. Sarieddine's request is therefore DENIED on this basis alone." (Order at 10).

[8] Ellinger stated, in pertinent part: "Alien Visions [has] used the mark ALIEN VISIONS in commerce for e-liquid since at least as early as July 22, 2010." Doc.

(Footnote continues on next page.)

21

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SUMMARY JUDGEMENT**

continuous since 2009 and its mark *is* entitled to priority as a matter of law. Sarieddine's sole complaint is that Ellinger attested to accurate facts of which he could not have had personal knowledge, as he stated he did in his declaration Dkt. No. 1-1, ¶ 1), because he did not join Alien Visions until 2013.  However, Ellinger could easily have testified to the same facts based on institutional knowledge, and the fact that he did not was based solely on his inexperience in legal matters, his lack of appreciation of the difference between personal and institutional knowledge, and his trust of Smok's lawyers, who prepared the declaration for his signature.[9]  In short, no harm, no foul. [10]

Moreover, "only two remedies are available to redress violations of the UCL: injunctive relief and restitution." *Feitelberg v. Credit Suisse First Boston, LLC,* 134 Cal. App. 4th 997, 1012 (2005).  Restitution necessarily requires that "money or property have been lost by a plaintiff, on the one hand, and that it have been acquired by a defendant, on the other." *Kwikset Corp. v. Superior Court,* 51 Cal. 4th 310, 336 (2011).  Damages are not recoverable for a claim under the UCL.  *See, e.g., Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1150-52 (2003).  Sarieddine's allegation is that submission of the declaration has "harmed Plaintiff's ALIEN VAPE® marks and resulted in increased litigation costs for Plaintiff in [the

---

1-1, ¶ 2. Because, as shown, the actual first-use date was in 2009, his statement is technically accurate but needs clarification.

[9] Ellinger is a former Marine and Correctional Officer with no training in law. SOF ¶ 78.  Moreover, he was very familiar with Alien Visions and its principals beginning in 2009, before he formally joined the company in 2013.

[10] Even if one assumes that Ellinger should have made his attestations based on institutional knowledge rather than personal knowledge, such a failure would not even approach the level of affirmative misrepresentation claimed to be actionable by Sarieddine. *See, e.g., Vesta Corp. v. Amdocs Mgmt.*, No. 3:14-cv-001142-HZ, 2018 U.S. Dist. LEXIS 16326 (D. Or. Feb. 1, 2018) (dismissing claim for sanctions based on 30(b)(6) expert deponent testifying on personal and not institutional knowledge).

22

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SUMMARY JUDGEMENT**

Smok case] and related cases involving Plaintiff's trademarks." (Complaint ¶ 71.) These are precisely the type of non-restitutionary damages that cannot be recovered under the UCL. Moreover, injunctive relief is also not available to Sarieddine as there is no evidence whatsoever that the complained-of act (use of Ellinger's declaration) is ongoing; in fact, to Alien Visions' knowledge, the only use of his declaration was the cited filing in the SMOK case back in 2017.

Third, given that Sarieddine's complaint is that Ellinger submitted the declaration in his individual capacity and not as a corporate representative, then that perforce means that Alien Visions did not submit the declaration. As Ellinger acknowledges, he agreed to submit the declaration in the SMOK case, and did so, without the involvement of anyone else. SOF ¶¶ 75-76. Thus, based on Sarieddine's own allegations, Ellinger's actions were solely as an individual and cannot be imputed to Alien Visions for purposes of liability.

## IV.    CONCLUSION

In the early days of the e-cigarette industry, Alien Visions was a trailblazer with tremendous popularity, significant web traffic, provable market share, and millions of dollars in sales, which in the aggregate demonstrate market penetration throughout the United States. Sarieddine, on the other hand, has trouble showing *any* sales or advertising activity during that time. Two sales of $135 of product to friends-of-friends are *de minimus,* and as a matter of law cannot support his claim for priority. On this basis alone, his registrations must be canceled. Without his registrations, he must look to his common law rights. He has not shown any rights outside of Southern California until 2017. Even in California, he cannot even show ten sales in the same time period during which Alien Visions had more than 12,000. (*See infra* Appendix A). To the extent he has asserted claims regarding Sam Ellinger, those claims are baseless as well. Summary judgment is appropriate on all claims in this case in Alien Visions' favor.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SUMMARY JUDGEMENT**

01423876-11

## Appendix A
## The Parties' Yearly Sales by State (SOF ¶ 81)

| State | Alien Visions' Sales | | | | | Alien Visions Total | Sarieddine's Sales | | | | | Sarieddine Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 2010 | 2011 | 2012 | 2013 | 2014 | | 2010 | 2011 | 2012 | 2013 | 2014 | |
| AK | 38 | 48 | 169 | 254 | 149 | 658 | | | | | | |
| AL | 33 | 170 | 295 | 585 | 580 | 1663 | | | | 1 | | 1 |
| AR | 42 | 150 | 2 | 4 | 137 | 335 | | | | 1 | | 1 |
| AZ | 89 | 346 | 298 | 659 | 762 | 2154 | | | | | | |
| CA | 394 | 1499 | 1981 | 4883 | 3808 | 12565 | | | | 3 | 2 | 5 |
| CO | 44 | 202 | 355 | 540 | 482 | 1623 | | | | | | |
| CT | 30 | 160 | 206 | 392 | 311 | 1099 | | | | | | |
| DC | | 2 | 11 | 32 | 46 | 91 | | | | | | |
| DE | 42 | 55 | 61 | 67 | 63 | 288 | | | | | | |
| FL | 216 | 804 | 1052 | 2063 | 1973 | 6108 | | | | | 1 | 1 |
| GA | 95 | 334 | 500 | 926 | 967 | 2822 | | | | | | |
| HI | 19 | 84 | 122 | 229 | 191 | 645 | | | | | | |
| IA | 31 | 62 | 130 | 217 | 239 | 679 | | | | | | |
| ID | 15 | 52 | 413 | 668 | 382 | 1530 | | | | | | |
| IL | 182 | 586 | 741 | 1335 | 1253 | 4097 | | | | | | |
| IN | 68 | 224 | 4 | 20 | 369 | 685 | | | | | | |
| KS | 58 | 140 | 119 | 171 | 284 | 772 | | | | | | |
| KY | 90 | 222 | 301 | 532 | 528 | 1673 | | | | | | |
| LA | 61 | 173 | 264 | 353 | 448 | 1299 | | | | | | |
| MA | 85 | 237 | 309 | 678 | 638 | 1947 | | | | | | |
| MD | 66 | 201 | 1 | 41 | 278 | 587 | | | | | | |
| ME | 79 | 164 | 384 | 596 | 339 | 1562 | | | | | | |
| MI | 150 | 344 | 418 | 729 | 770 | 2411 | | | | | | |
| MN | 22 | 161 | 221 | 518 | 500 | 1422 | | | | | | |
| MO | 36 | 289 | 340 | 643 | 554 | 1862 | | | | | | |
| MS | 9 | 86 | | 9 | 71 | 175 | | | | | | |
| MT | 12 | 20 | 26 | 26 | 22 | 106 | | | | | | |
| NC | 110 | 346 | 566 | 831 | 848 | 2701 | | | | | | |
| ND | 2 | 26 | 34 | 52 | 46 | 160 | | | | | | |
| NE | 7 | 40 | 63 | 133 | 177 | 420 | | | | | | |
| NH | 19 | 41 | 48 | 117 | 91 | 316 | | | | | | |
| NJ | 100 | 380 | 472 | 853 | 742 | 2547 | | | | 1 | | 1 |
| NM | 20 | 76 | 86 | 122 | 166 | 470 | | | | | | |
| NV | 38 | 155 | 174 | 762 | 1311 | 2440 | | | | | | |

24

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SUMMARY JUDGEMENT**

01423876-11

| State | Alien Visions' Sales 2010 | 2011 | 2012 | 2013 | 2014 | Alien Visions Total | Sarieddine's Sales 2010 | 2011 | 2012 | 2013 | 2014 | Sarieddine Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| NY | 258 | 833 | 1084 | 1990 | 1772 | 5937 | | | | | | |
| OH | 131 | 490 | 626 | 1108 | 1160 | 3515 | | | | 1 | | 1 |
| OK | 120 | 313 | 297 | 488 | 403 | 1621 | | | | | | |
| OR | 46 | 157 | 173 | 914 | 671 | 1961 | | | | | | |
| PA | 159 | 548 | 725 | 1136 | 1193 | 3761 | | | | | | |
| RI | 7 | 34 | 40 | 97 | 66 | 244 | | | | | 4 | 4 |
| SC | 18 | 136 | 136 | 289 | 352 | 931 | | | | | | |
| SD | 12 | 43 | 33 | 57 | 51 | 196 | | | | | | |
| TN | 63 | 355 | 412 | 561 | 723 | 2114 | | | | | | |
| TX | 368 | 1204 | 1476 | 2770 | 2668 | 8486 | | | | | | |
| UT | 25 | 98 | 88 | 170 | 130 | 511 | | | | | | |
| VA | 98 | 304 | 454 | 848 | 793 | 2497 | | | 1 | | | 1 |
| VI | | | | 3 | | 3 | | | | | | |
| VT | 3 | 45 | 8 | 27 | 39 | 122 | | | | | | |
| WA | 103 | 403 | 433 | 647 | 631 | 2217 | | | | | | |
| WI | 68 | 201 | 262 | 421 | 463 | 1415 | | | 1 | | | 1 |
| WV | 34 | 84 | 75 | 139 | 157 | 489 | | | | | | |
| WY | 11 | 17 | 24 | 30 | 27 | 109 | | | | | | |
| Grand Total | 3826 | 13144 | 16512 | 31735 | 30824 | 96041 | | | | 8 | 8 | 16 |

Dated: March 14, 2019          ONE LLP

By: /s/John E. Lord
    John E. Lord

TAYLOR ENGLISH DUMA LLP

By: /s/ Amanda G. Hyland
    Amanda G. Hyland (admitted *pro hac vice*)
    Seth K. Trimble (admitted *pro hac vice*)

    *Attorneys for Defendant*
    *Alien Visions E-Juice, Inc*

25

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SUMMARY JUDGEMENT**

01423876-11