John E. Lord (SBN 216111)
Email:  jlord@onellp.com
**ONE LLP**
9301 Wilshire Blvd.
Penthouse Suite
Beverly Hills, CA 90210
Telephone:  (310) 866-5157
Facsimile:    (310) 943-2085

Amanda G. Hyland (*pro hac vice*)
Email:  ahyland@taylorenglish.com
Seth K. Trimble (*pro hac vice*)
Email:  strimble@taylorenglish.com
**TAYLOR ENGLISH DUMA LLP**
1600 Parkwood Circle, Suite 200
Atlanta, GA  30339
Telephone:  (770) 434-6868
Facsimile:    (770) 434-7376

*Counsel for Defendant*
*Alien Visions E-Juice, Inc.*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIKE SARIEDDINE, an individual,<br><br>Plaintiff,<br><br>v.<br><br>ALIEN VISIONS E-JUICE, INC., a California corporation; and DOES 1 through 10, inclusive,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIMS | Case No. 2:18-cv-3658-PA-MAA<br>Hon. Percy Anderson<br><br>**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF DEFENDANT ALIEN VISIONS E-JUICE, INC.'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date:            April 15, 2019<br>Time:           1:30 PM<br>Courtroom:   9A<br>Complaint Filed:  May 1, 2018 |

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

Defendant Alien Visions E-Juice, Inc. (hereinafter "Alien Visions" or "Defendant"), by and through its attorneys, submits this Statement of Uncontroverted Facts and Conclusions of Law in support of Defendant's Motion for Summary Judgment as required by Rule 56 of the Federal Rules of Civil Procedure and L.R. 56-1.

## I.   UNCONTROVERTED FACTS

| FACT | Plaintiff's Response to Cited Facts and Supporting Evidence |
|---|---|
| 1. Christiane and Benjamin LaBarre met in the Army and married in 1998. *Evidence:* LaBarre Declaration ¶ 2. | |
| 2. Christiane and Ben were both smokers, and had lost three of their parents to smoking-related illnesses. *Evidence:* LaBarre Declaration ¶ 4. | |
| 3. Christiane and Ben had tried to quit smoking using gum, pills, and patches, but they both finally quit for good in July 2009 when they switched to vaping. *Evidence:* LaBarre Declaration ¶ 3. | |
| 4. Vaping hardware and juices were not widely available then, especially in Korea where they were both living, and in September 2009 Mr. LaBarre started mixing his own liquids. | |

1

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

| FACT | Plaintiff's Response to Cited Facts and Supporting Evidence |
|---|---|
| *Evidence:* LaBarre Declaration ¶ 5. | |
| 5. With the encouragement of friends, Ben and Christiane started a business in November 2009 selling the e-juices he had formulated. They incorporated in 2010 in Oklahoma as Alien Visions E-Juice, Inc. *Evidence:* LaBarre Declaration ¶ 6; Exhibit A thereto. | |
| 6. From the first day, they sold the e-juices under the mark "ALIEN VISIONS E-JUICE." *Evidence:* LaBarre Declaration ¶ 7. | |
| 7. Christiane and Ben chose the name carefully. First, they noticed that "A" names were listed first in the vaping forums and wanted an "A" name that would be prioritized online. *Evidence:* LaBarre Declaration ¶ 8. | |
| 8. Christiane and Ben liked the word "Alien" because it was evocative of their expatriate status in Korea. *Evidence:* LaBarre Declaration ¶ 9. | |

2

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

| FACT | Plaintiff's Response to Cited Facts and Supporting Evidence |
|---|---|
| 9. "Visions" was chosen to reference the vision that was required to formulate good flavors. *Evidence:* LaBarre Declaration ¶ 10. | |
| 10. On November 13, 2009, Christiane and Ben registered the domain for avejuice.com. *Evidence:* LaBarre Declaration ¶ 11 | |
| 11. Christiane and Ben decided on "avejuice" for the domain name because they thought "alien visions e-juice" was so long it might be mistyped in the address bar. *Evidence:* LaBarre Declaration ¶ 12 | |
| 12. Christiane and Ben found themselves in an emerging market without any clear precedent on how or where to advertise. Just as tobacco products cannot be advertised in mainstream media, neither could vaping products, and even Google refused to run ads for vaping products. *Evidence:* LaBarre Declaration ¶ 13; Expert Report of Oliver Kershaw p. 3 | |

3

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

| FACT | Plaintiff's Response to Cited Facts and Supporting Evidence |
|---|---|
| 13. In the early days of vaping, e-cigarette users flocked to online forums to learn more about e-cigarette products, which were hard to find in brick-and-mortar stores. *Evidence:* LaBarre Declaration ¶ 14; Expert Report of Kershaw p. 3. | |
| 14. Mr. LaBarre recognized that the best possible advertising was to meet these users where they congregated – on the forums. *Evidence:* LaBarre Declaration ¶ 15 | |
| 15. Beginning December 6, 2009, under the screenname "Porphy" and doing business as "Alien Visions E-Juice," Mr. LaBarre regularly promoted Alien Visions on e-cigarette-forum.com ("ECF"), the most popular vaping forum in the world, and nu-vapor.com. *Evidence:* LaBarre Declaration ¶ 16; Expert Report of Kershaw, p. 4 | |
| 16. A review of just a portion of the ECF forum between 2009 and April 21, 2014 shows 990 posts by "Porphy" in | |

4

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

| FACT | Plaintiff's Response to Cited Facts and Supporting Evidence |
|---|---|
| which he was promoting Alien Visions. *Evidence:* Declaration of Seth Trimble ¶¶ 5-6, Ex. B. | |
| 17. Traffic poured into Alien Visions' website. Google analytics shows that by the end of 2013, the site had been visited more than 900,000 times by more than 345,000 visitors. *Evidence:* Trimble Dec. ¶¶ 10-12 & Ex. D | |
| 18. Google analytics data, as summarized in Table 1. *Evidence:* Trimble Dec. ¶ 13. | |
| 19. Alien Visions also enjoyed a steady increase in sales. From 2009 until April 21, 2014, its sales increased every year and totaled $3.79 million. *Evidence:* LaBarre Declaration ¶¶ 17-19. | |
| 20. Its number of sales also increased each year and totaled 78,407 by April 21, 2014. *Evidence:* LaBarre Declaration ¶ 19. | |
| 21. Sales data, as summarized in Table 2. | |

5

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

| FACT | Plaintiff's Response to Cited Facts and Supporting Evidence |
|---|---|
| *Evidence:* LaBarre Declaration ¶ 14. | |
| 22. These sales were nationwide, and included more than 21 distributor accounts. *Evidence:* LaBarre Declaration ¶ 20. | |
| 23. Data contained in map images. *Evidence:* Trimble Dec. ¶ 22. | |
| 24. During the early years of this emerging market, no sales data for the industry data is available. Indeed, all e-juice market reports begin in 2014 or later. *Evidence:* Hyland Dec. ¶ 3. | |
| 25. The number of e-cigarette users during 2011-2013 can be estimated by identifying the number of unique visitors to the ECF website, as this forum was the only major source for vaping information during that time, and nearly all serious e-cigarette users were actively visiting the site then. *Evidence:* Kershaw Declaration ¶¶ 6-13 | |
| 26. Data contained in Table 3. | |

6

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

| FACT | Plaintiff's Response to Cited Facts and Supporting Evidence |
|---|---|
| *Evidence:* Trimble Dec. ¶ 15. | |
| 27. Youtubers uploaded 45 video reviews of Alien Visons' products during those four-and-a-half years. *Evidence:* Trimble Dec. ¶¶ 17, 19. | |
| 28. A small sampling of the ECF forums also show *thousands* of posts about Alien Visions. *Evidence:* Trimble Dec. ¶¶ 3-9 & Exs. A and B thereto. | |
| 29. Alien Visions had its own site, or "subforum," within CMF forum exclusively dedicated to discussions about Alien Visions' products. *Evidence:* LaBarre Declaration ¶ 21 | |
| 30. Until April 21, 2014, that forum contained 12,489 individual posts, which were viewed 1.4 million times *Evidence:* Trimble Dec. ¶ 9. | |
| 31. "Passerbyeus" posted in ECF on 7/25/2012: *To most this juice needs no intro to other who have not had the privilege of trying it or have been under a rock and not heard of it yet, I thought I* | |

7

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

| FACT | Plaintiff's Response to Cited Facts and Supporting Evidence |
|---|---|
| *would enlighten you on this awesome juice."* *Evidence:* Trimble Dec. Ex. C. | |
| 32. When reviewing a sample of posts referencing "Alien Visions" in another popular forum, NuVapor.com, its users published 3,649 times in posts relating to Alien Visions prior to April 22, 2014. *Evidence*: Trimble Dec. ¶¶ 16-18. | |
| 33. Alien Visions' workforce has remained tightly controlled, largely to ensure that only a few trusted employees have knowledge of the proprietary formulas. Evidence: *Evidence:* LaBarre Declaration ¶ 22. | |
| 34. Alien Vision has typically employed one or two people, and never more than nine. *Evidence*: LaBarre Declaration ¶ 22. | |
| 35. According to his original trademark application filed with the United States Patent and Trademark Office ("USPTO"), Sarieddine began selling e-cigarette vaporizers under the | |

8

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

| FACT | Plaintiff's Response to Cited Facts and Supporting Evidence |
|---|---|
| design mark "ALIEN VAPE. VAPE JUST GOT REAL!" at least as early as April 30, 2013. *Evidence*: Hyland Dec. ¶ 4, Exhibit A thereto. | |
| 36. According to another USPTO trademark application, Sarieddine began selling e-cigarette vaporizers under the design mark "ALIEN VAPE" at least as early as April 15, 2013. *Evidence*: Hyland Dec. ¶ 5, Exhibit B thereto. | |
| 37. These Sarieddine trademark applications matured into U.S. Registration No. 4997336 on July 12, 2016, and U.S. Registration No. 4517249 on April 22, 2014, respectively ("the Registrations"). *Evidence*: Hyland Dec. ¶ 6. | |
| 38. It was only after Sarieddine was involved in trademark disputes in which he learned of other users of the term "ALIEN" that predated May 2013 that he started claiming ever- | |

9

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

| FACT | Plaintiff's Response to Cited Facts and Supporting Evidence |
|---|---|
| reversing first use dates, each new date in response to an allegation of a third party's earlier date. *Evidence*: *Sarieddine v. Big Bang*, Case No. 2:17-cv-989-DSF ("Big Bang"); Dkt. 26-1 pp. 31-32; Big Bang Dkt. 1, ¶ 6; Smok Case Dkt. No. 71-1 p.1 and 71-2 ¶ 1; Smok Case Dkt. No. 102; Smok Case Dkt. No. 109-2 ¶ 4; Big Bang Case Dkt. 48 ¶ 12. (Request for Judicial Notice ¶¶ 1-7 and all exhibits thereto). | |
| 39. In August 2016 settlement communications with Big Bang, after being pointed to a March 2013 YouTube review of ALIEN PISS, Sarieddine reversed his first use date to January 2013. In those same discussions, after learning of Big Bang's November 2012 first-use date, he reversed his date again, this time to June of 2012. *Evidence:* Big Bang Dkt. 26-1 pp. 31-32 (Request for Judicial Notice ¶ 2 and Ex. B). | |

10

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

| FACT | Plaintiff's Response to Cited Facts and Supporting Evidence |
|---|---|
| 40. Sarieddine initiated the lawsuit against Big Bang in February 2017 and claimed June 2012 as his first-use date in the initial complaint. *Evidence*: Big Bang Dkt. 1, ¶ 6; (Request for Judicial Notice ¶ 1 and Ex. A). | |
| 41. On May 26, 2017, in a declaration supporting his motion for preliminary injunction in Case No. 2:17-cv-02390-DSF-SK ("Smok Case"), Sarieddine claimed that his first use was in May 2011. *Evidence:* Smok Case Dkt. No. 71-1 p.1 and 71-2 ¶ 1. (Request for Judicial Notice ¶ 5 and Ex. E). | |
| 42. Smok's counsel presented evidence of uses earlier than May 2011 of the term "Alien" in the vaping industry in a filing on June 16, 2017. *Evidence:* Smok Case Dkt. No. 102. (Request for Judicial Notice ¶ 6 and Ex. F & G). | |

11

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

| FACT | Plaintiff's Response to Cited Facts and Supporting Evidence |
|---|---|
| 43. In a June 25, 2017, filing, Sarieddine claimed in a declaration that he had used the mark since 2008. *Evidence*: Smok Case Dkt. No. 109-2 ¶ 4. (Request for Judicial Notice ¶ 7 and Ex. I). | |
| 44. Sarieddine amended his complaint in the Big Bang case in January 2018 to allege first use in 2008. *Evidence:* Big Bang Case Dkt. 48 ¶ 12. (Request for Judicial Notice ¶ 3 and Ex. C). | |
| 45. Mr. Sarieddine cannot recall which manufacturer made the vaping pens he sold in 2008. *Evidence:* Hyland Dec. Exhibit C, Deposition Transcript of Mike Sarieddine, p. 62 | |
| 46. Sarieddine has no record of communicating with the manufacturer, no record of ordering the pens, no record of paying for the pens, no memory of how many he ordered, no record of them being | |

12

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

| FACT | Plaintiff's Response to Cited Facts and Supporting Evidence |
|---|---|
| shipped to him, and no recollection of how much revenue they generated *Evidence:* Hyland Dec. Ex. C (Sarieddine Depo.) pp. 62-66, 77 | |
| 47. According to Mr. Sarieddine, he asked "a guy named Dave," a girl whose name he can't recall, and his friend Rami Chemaly to sell the pens. *Evidence:* Hyland Dec. Ex. C (Sarieddine Depo.) p. 66 | |
| 48. Sarieddine says Chemaly made sales of the pens to his friends in cash transactions. *Evidence:* Hyland Dec. Ex. C (Sarieddine Depo.) pp. 73-74 | |
| 49. He recorded these sales in an invoice book which has now vanished, and for which no carbon copies have been retained. *Evidence:* Hyland Dec. Ex. C (Sarieddine Depo.) pp. 75-76; Ex. D (Responses to Document Requests Request No. 5). | |

13

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

| FACT | Plaintiff's Response to Cited Facts and Supporting Evidence |
|---|---|
| 50. Mr. Chemaly did not keep the receipt book or the carbon copies, but he photocopied a handful of early receipts that he held on to for a decade so that he could provide them to Sarieddine for purposes of this lawsuit.<br><br>*Evidence:* Hyland Dec. Ex. C (Sarieddine Depo.) pp. 75-76 | |
| 51. An alleged sale was made to Micah Davis on December 10, 2008.<br><br>*Evidence:* Hyland Dec. Ex. E (Davis Depo.) and exhibit B thereto. | |
| 52. Davis testified that Chemaly was a friend or acquaintance who sold him the pen personally in Lancaster.<br><br>*Evidence:* Hyland Dec. Ex. E (Davis Depo.) pp. 7, 13 | |
| 53. Davis recalled no details regarding the pen or the sale except that he paid $100 for the pen.<br><br>*Evidence:* Hyland Dec. Ex. E (Davis Depo.) pp. 11, 15-16 | |

14

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

| FACT | Plaintiff's Response to Cited Facts and Supporting Evidence |
|---|---|
| 54. An alleged sale was made to Harpreet Singh, also in Lancaster, on December 23, 2008 for $35.<br><br>*Evidence:* Hyland Dec. Ex. F (Singh Depo.) Ex. B. | |
| 55. Singh said he bought one vape kit directly from Chemaly "as a friend."<br><br>*Evidence:* Hyland Dec. Ex. F (Singh Depo.) pp. 11, 19. | |
| 56. Ali Hassan, a Sarieddine family friend, testified that he bought "ALIEN VAPE" branded vaping pens from Sarieddine sometime around June of 2012, and would then put the products in the back of his van and try to sell them to smoke shops in southern California.<br><br>*Evidence:* Hyland Dec. Ex. G (Hassan Depo.) pp. 23-24. | |
| 57. He has no records of any of these purported sales to smoke shops, nor is there any evidence that the smoke shops offered the products for sale or sold them. | |

15

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

| FACT | Plaintiff's Response to Cited Facts and Supporting Evidence |
|---|---|
| *Evidence:* Hyland Dec. Ex. G (Hassan Depo.) pp. 33-35. | |
| 58. Sarieddine produced is one receipt showing that a sale was made to Hassan, which is from December 2012 for $460.<br><br>*Evidence:* Hyland Dec. Ex. G (Hassan Depo.) and Ex. B thereto. | |
| 59. In April 2013, Sarieddine went to China to meet with a manufacturer of vaping hardware.<br><br>*Evidence:* Hyland Dec. Ex. C (Sarieddine Depo.) p. 79. | |
| 60. At that time, Sarieddine placed an order for about 5,000 hardware units.<br><br>*Evidence:* Hyland Dec. Ex. C (Sarieddine Depo.) p. 235. | |
| 61. During that trip, Sarieddine came up with the "Vape Just Got Real" tagline and designed the alien head logo.<br><br>*Evidence:* Hyland Dec. Ex. C (Sarieddine Depo.) pp. 53-54, 153-155. | |

16

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

| FACT | Plaintiff's Response to Cited Facts and Supporting Evidence |
|---|---|
| 62. Sarieddine also applied for the trademark for the alien had logo with the tagline himself while he was in China, on May 2, 2013.<br><br>*Evidence:* Hyland Dec. Ex. C (Sarieddine Depo.) pp. 79-81. | |
| 63. The vaping units that displayed this new logo and tagline were then manufactured and arrived for sale in the United States sometime thereafter.<br><br>*Evidence:* Hyland Dec. Ex. C (Sarieddine Depo.) pp. 54-55. | |
| 64. From 2008 until the present date, Sarieddine has been unable to identify any advertising expenses that relate specifically to the United States.<br><br>*Evidence:* Hyland Dec. ¶ 12. | |
| 65. Although Sarieddine claims having spent $100,000 in advertising, the expenses are not itemized and most appear to be related to international | |

17

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

| FACT | Plaintiff's Response to Cited Facts and Supporting Evidence |
|---|---|
| trade shows and a UK-based magazine. *Evidence:* Hyland Dec. ¶ 13 and Ex. H; Hyland Dec. Ex. C (Sarieddine Depo.) pp. 95-97 and Ex. 6 thereto. | |
| 66. From 2008 until 2015, Sarieddine could not identify any distributors of his product or any websites where it was sold, other than his own. *Evidence:* Hyland Dec. Ex. C (Sarieddine Depo.) p. 56. | |
| 67. While Sarieddine has provided a list of distributors and documents regarding his revenues from 2015-2018, most of those sales were to foreign customers. *Evidence:* Hyland Dec. ¶ 14; Ex. I; Ex. C (Sarieddine Depo.) pp. 200-202, and Ex. 29 thereto. | |
| 68. Of the $1 million in total income Sarieddine reports during this timeframe, at least $908,917 of that income came from customers outside the United States. | |

18

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

| FACT | Plaintiff's Response to Cited Facts and Supporting Evidence |
|---|---|
| *Evidence:* Hyland Dec. ¶ 14. | |
| 69. After the two sales to Davis and Singh in 2008, from 2010-2014, Sarieddine has provided evidence of only 16 sales.<br><br>*Evidence:* Trimble Dec. ¶ 20. | |
| 70. In 2015, Sarieddine appears to have 3 orders, and in 2016, he appears to have 44 orders.<br><br>*Evidence:* Trimble Dec. ¶ 21. | |
| 71. In order of filing the cases are: *Sarieddine v. Big Bang Vape Co. LLC, et al.*, Case No. 2:17-cv-0989 (C.D. Cal.) (Fischer, J.) (Filed February 7, 2017); *Sarieddine v. D and A Distribution, LLC, et al.*, Case No. 2:17-cv-2390 (C.D. Cal.) (Fischer, J.) (Filed March 28, 2017); *Sarieddine v. Sonder LLC*, No. 2:17-cv-3779 (C.D. Cal.) (Fischer, J.) (Filed May 18, 2017); *Sarieddine v. Downtown Vapes LLC*, Case No. 2:18-cv-8342 (C.D. Cal.) (Anderson, J.) (Filed November 15, 2017); *Sarieddine v. Kenneth Andrews*, Case | |

19

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

| FACT | Plaintiff's Response to Cited Facts and Supporting Evidence |
|---|---|
| No. 2:18-cv-0077 (C.D. Cal.) (Fitzgerald, J.) (Filed January 4, 2018); *Sarieddine v. Alien Vapor Enterprises, LLC, et al.*, Case No. 2:18-cv-3297 (C.D. Cal.) (Snyder, J.) (Filed April 19, 2018); *Sarieddine v. Alien Visions E-Juice, Inc.*, Case No. 2:18-cv-3658 (C.D. Cal.) (Anderson, J.) (filed May 1, 2018). *Evidence:* Request for Judicial Notice ¶ 9. | |
| 72. One of the first trademark lawsuits filed by Sarieddine was against Shenzhen IVPS Technology Co., Ltd., a major Chinese manufacturer of vaping hardware doing business as "Smok." Request for Judicial Notice ¶ 9. | |
| 73. In that case, in their efforts to defend a motion for preliminary injunction, lawyers for Smok obtained evidence of third-party use of the term "alien" in the vaping industry. *Evidence:* Smok Case Dkt. No. 102 and all Declarations filed therewith. | |

20

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

| FACT | Plaintiff's Response to Cited Facts and Supporting Evidence |
|---|---|
| (Request for Judicial Notice ¶ 6 and Ex. F, G, H). | |
| 74. In so doing, they reached out to Alien Visions and spoke to its manager, Sam Ellinger, who agreed to sign an affidavit for Smok's lawyers stating that Alien Visions has been using the mark since at least 2010. *Evidence:* Ellinger Dec. ¶¶ 4-6. | |
| 75. Ellinger understood that the company had been doing business since 2010 based on numerous conversations she had had with Christiane and Ben LaBarre. *Evidence:* Ellinger Dec. ¶¶ 3-4. | |
| 76. Smok's lawyers drafted the affidavit and stated that the affidavit was based on Ellinger's "personal knowledge." *Evidence:* Ellinger Dec. ¶¶ 5-6 & Exhibit thereto. | |
| 77. Ellinger did not understand that phrase to have any particular meaning, and he signed the | |

21

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

| FACT | Plaintiff's Response to Cited Facts and Supporting Evidence |
|---|---|
| declaration as it was originally worded.  He is a former Marine and Corrections officer and not a lawyer.<br><br>*Evidence:* Ellinger Dec. ¶¶ 2, 5-6. | |
| 78. The declaration was submitted to Judge Fischer in opposition to the motion for preliminary injunction.<br><br>*Evidence:* Smok Case Dkt. No. 102 | |
| 79. Judge Fischer denied the motion on other grounds and did not refer to the Ellinger declaration in her order.<br><br>*Evidence:* Smok Case Dkt. No. 123. | |
| 80. Sarieddine has admitted *in judico,* that he believes his marks and the "ALIEN VISIONS" mark are "highly similar" and infringing.<br><br>*Evidence:* Complaint ¶ 20. | |
| 81. Sales comparison by state and year found in Appendix A.<br>*Evidence* Trimble Dec. ¶ 22. | |

## II. CONCLUSIONS OF LAW

22

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

1. To prevail on a claim relating to trademark infringement, the plaintiff must prove: (1) that he has a protectable ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion. *Network Automation, Inc. v. Advanced Sys. Concepts*, 638 F.3d 1137, 1144 (9th Cir. 2011). "It is axiomatic in trademark law that the standard test of ownership is priority of use." *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996).

2. To acquire ownership of a trademark it is not enough for the plaintiff to have invented the mark first or even to have registered it first. *Id.* He "must have been the first to actually use the mark in the sale of goods or services." *Id.*

3. "Where an applicant seeks to prove a date earlier than the date alleged in its application, a heavier burden has been imposed on the applicant than the common law burden of preponderance of the evidence." *Hydro-Dynamics, Inc. v. George Putnam & Co.*, 811 F.2d 1470 (Fed. Cir. 1987); *see also Rockwood Chocolate Co. v. Hoffman Candy Co.*, 372 F.2d 552, 554 (CCPA 1967) ("proof of such earlier date must be clear and convincing"); *Elder Mfg. Co. v. Int'l Shoe Co.*, 194 F.2d 114, 118 (CCPA 1952) (same).

4. Federal registration of a mark is prima facie evidence that the registrant is the owner of the mark. 15 U.S.C. § 1057(b); 15 U.S.C. § 1115(a).

5. The defendant can rebut this presumption by showing that the Plaintiff "had not established valid ownership rights in the mark at the time of registration." In other words, if the defendant can show that it used the mark in commerce first, then the plaintiff's registration[s] may be invalidated. *Id.* at 1220; *see also Allard Enters. v. Advanced Programming Res., Inc.*, 249 F.3d 564, 572 (6th Cir. 2001) ("Federal registration of a trademark or service mark cannot create rights and priority over others who have previously used the mark in commerce.").

6. "The first to use a mark is deemed the 'senior' user and has the right to enjoin 'junior' users from using confusingly similar marks in the same industry and

23

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

market or within the senior user's natural zone of expansion." *Brookfield Communs., Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1047 (9th Cir. 1999).

7.     Sarieddine is granted a presumption of ownership. Sarieddine's first use date claimed in his trademark applications is in April of 2013. (SOF ¶ 38). In light of Alien Visions evidence of use beginning in 2009, Sarieddine has to show that he has legitimate, bona fide use not in April 2013 as he originally claimed, but more than four years prior to that. Thus, in this case, Sarieddine must show by clear and convincing evidence that his first use date was prior to April 2013.

8.     "The Lanham Act grants trademark protection only to marks that are used to identify and to distinguish goods or services in commerce." *Brookfield*, 174 F.3d at 1051. The term "use in commerce" means "the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark." 15 U.S.C. § 1127.

9.     To determine whether a use of the mark constitutes use in commerce, the court follows a "totality of the circumstances" approach, which turns on "evidence showing, first, adoption, and, second, use in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind" as those of the adopter of the mark. *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1205 (9th Cir. 2012) (quotations and citations omitted).

10.     A plaintiff "cannot rely on a few instances of use of the marks in the distant past that were casual or had little importance apparently attached to them." *Dep't of Parks & Rec. v. Bazaar Del Mundo, Inc.*, 448 F.3d 1118, 1126 (9th Cir. 2006).

11.     To demonstrate priority of use, the plaintiff's "use must be bona fide and commercial in character." *Id.* It must also be more than "token" or *de minimis* use. *Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1157 (9th Cir. 2001); *AOP Ventures, Inc. v. Steam Distribution, LLC*, No. 15-cv-1586-VAP, 2016 U.S. Dist. LEXIS 193035, at *11 (C.D. Cal. Oct. 11, 2016).

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

12. The photocopies of two handwritten receipts for $135 of vaping kits in December 2008 were both to acquaintances. Statement of Uncontroverted Facts ("SOF") ¶¶ 51-55. No advertising was made in connection with the sales, or otherwise to promote the mark during this time. "Sales" of this nature are insufficiently public to establish priority in a mark, particularly when Sarieddine made no efforts to promote the mark to the consuming public through advertising. Making two sales, in-person, in the same city, to individuals known personally to the "salesman" falls far short of the kind of bona fide, commercial activities necessary "to identify or distinguish the marked goods in an appropriate segment of the public mind."

13. "[A] registration may be canceled by the reviewing court where the registered mark resembles the "mark or trade name previously used in the United States by another and not abandoned." 15 U.S.C. § 1052(d), 15 U.S.C. § 1064, 15 U.S.C. § 1119.

14. Sarieddine's oldest trademark registration issued on April 14, 2014. (SOF ¶ 38). This registration created constructive notice of Sarieddine's claim of ownership of the mark, thereby precluding anyone else thereafter from claiming good faith, innocent use or expanded use of the same mark after the date of registration. 15 U.S.C. § 1115.

15. This priority, however, is not absolute. The Lanham Act is clear that a user of the same mark is not infringing if that user adopted the mark before the registrant's application date. 15 U.S.C. § 1115(b)(5).

16. Here, Sarieddine has admitted *in judico,* that he believes his marks and the "ALIEN VISIONS" mark are "highly similar" and infringing. SOF ¶ 81.

17. Market penetration is determined by: (1) the volume of sales with regard to the product at issue; (2) the positive and negative growth trends; (3) the number of people who purchased the party's goods in relation to the number of potential customers; and (4) the amount of advertising. *Adray v. Adry-Mart, Inc.*, 76 F.3d 984, 989 (9th Cir. 1995).

25

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

18. "Where the trademark user has acquired a national reputation associated with its mark, it may assert trademark rights even in areas where it has no sales. *Glow Indus. v. Lopez*, 252 F. Supp. 2d 962, 983 (C.D. Cal. 2002) (citing *Champions Golf Club v. Champions Golf Club*, 78 F.3d 1111, 1124 (6th Cir. 1996); *Golden Door, Inc. v. Odisho*, 437 F. Supp. 956, 962 (N.D. Cal. 1977)).

19. Alien Visions has provided undisputed evidence that prior to April 22, 2014:

- It had significant and increasing sales into every single metro area and every single state in the United States. *See* Appendix A, Appendix B and Maps.

- It sold $3.79 million worth of its products. *See* SOF ¶ 19, 21 and Table 2.

- Its founder promoted Alien Visions almost 1,000 times in the only significant marketing platform of the time. SOF ¶ 16.

- Its website received more than 345,000 unique visitors in all 50 states who visited the site 906,000 times. SOF ¶ 17.

- Its website was visited by approximately 5% of all e-cigarette users nationally. SOF ¶ 23 and Table 3.

- The most popular forum of the time contained a special subforum for Alien Visions that contained 12,489 posts that were viewed 1.4 million times. SOF ¶¶ 29-30. Another popular forum contained more than 3,500 strings referencing Alien Visions. SOF ¶ 32.

20. Accordingly, there is no issue of fact as to Alien Visions' market penetration prior to Sarieddine's earliest registration date.

21. Alien Visions therefore cannot infringe Sarieddine's registration or any common law rights that he purports to have.

22. Without a registration, the only geographic area where Sarieddine has shown any sales prior to 2017 is in California, where he has shown less than ten sales between 2010 and 2014. Appendix A.

26

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

23.    During the same time period, Alien Visions has had 12,565 sales worth about $500,000 in California. *See* SOF ¶¶ 19-21.

24.    There can be no question that Sarieddine had not created any market penetration such that Alien Visions could infringe his common law rights in California.

25.    "In any action involving a registered mark the court may determine the right to registration, order the cancelation of registrations, in whole or in part, . . . and otherwise rectify the register with respect to the registrations of any party to the action." 15 U.S.C. § 1119.

26.    Within five years of registration of a mark, an opposing party may raise any available statutory ground for opposition or cancellation that negates a trademark owner's right to registration. *See* 15 U.S.C. § 1064; Trademark Trial and Appeal Board Manual of Procedure § 102.01 and cases cited therein.

27.    The Sarieddine marks were registered on July 12, 2016, and April 22, 2014, so both marks are within the five-year timeframe.

28.    A registered mark may be canceled if there was no bona fide use of the mark in commerce prior to the filing of a use-based application for its registration under 15 U.S.C. § 1051(a).

29.    When filing a use-based application, the statement "shall be verified by the applicant and specify that . . . the mark is in use in commerce." 15 U.S.C. § 1051(a)(3)(c).  The term "<u>use in commerce</u>" is defined, in pertinent part, in 15 U.S.C. § 1127 to mean:

> … the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark. For purposes of this chapter, a mark shall be deemed to be in use in commerce—
>
> (1) on goods when—

27

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

(A) it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and

(B) the goods are sold or transported in commerce….

*see also Paramount Pictures Corp. v. White*, 31 USPQ2d 1768, 1769 (TTAB 1994) ("use in commerce" involves the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark), *aff'd* 108 F.3d 1392 (Fed. Cir. 1997) (unpublished).

30. Where the opposing party can show that the statement of use in commerce was false, the application is void and the mark should be canceled. *See, e.g., Clorox Co. v. Salazar*, 108 USPQ2d 1083, 1086-87 (TTAB 2013) (applicant's mark was not in use in commerce as of the filing date of the use-based application, and therefore the application was void *ab initio*); *ShutEmDown Sports Inc. v. Lacy*, 102 USPQ2d 1036 (TTAB 2012) (same).

31. Sarieddine testified that, at the time he designed and applied for the "ALIEN VAPE. VAPE JUST GOT REAL!" mark, he was not using it in commerce on any product. SOF ¶¶ 62-64.

32. However, when he applied for the trademark, he falsely verified that he *was* using the mark in commerce. SOF ¶ 38.

33. If the information Sarieddine revealed during his testimony had been disclosed to the USPTO, the USPTO would not have granted his application for registration of the "ALIEN VAPE. VAPE JUST GOT REAL!" mark based on use in commerce. Thus, the false statement voids the registration and provides an additional ground for calling the registration.

34. "To effectuate its vital purposes, the litigation privilege is held to be absolute in nature." *Silberg v. Anderson,* 50 Cal.3d 205, 215 (1990). It applies to declarations alleged to be false, *Cantu v. Resolution Trust Corp.,* 4 Cal.App.4th 857,

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

886 (1992), and "is accorded not only to parties but to witnesses, even where their testimony is allegedly perjured and malicious." *Pettitt v. Levy,* 28 Cal. App. 3d 484, 488 (1972).

35.   Accordingly, the declaration of Sam Ellinger was protected as a privileged communication under California Civil Code section 47(b) and cannot be the basis for such a claim.

36.   Although Sarieddine alleges that the declaration has "damaged Plaintiff by precluding Plaintiff from obtaining the injunction sought in Case No. 17-cv-2390 [Smok case]" (SOF ¶ 80), in that case Judge Fischer based her Order denying the motion for preliminary injunction on Sarieddine's delay and resultant failure to meet his burden to show irreparable harm. Her rationale was not based on, nor did it reference, Ellinger's declaration.

37.   Accordingly, there is no evidence of any harm to Sarieddine caused by the declaration.

38.   "[O]nly two remedies are available to redress violations of the UCL: injunctive relief and restitution." *Feitelberg v. Credit Suisse First Boston, LLC,* 134 Cal.App.4th 997, 1012 (2005).

39.   Restitution necessarily requires that "money or property have been lost by a plaintiff, on the one hand, and that it have been acquired by a defendant, on the other." *Kwikset Corp. v. Superior Court,* 51 Cal.4th 310, 336 (2011).

40.   Damages are not recoverable for a claim under the UCL.  *See, e.g., Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1150-52 (2003).

41.   Sarieddine's allegation is that submission of the declaration has "harmed Plaintiff's ALIEN VAPE® marks and resulted in increased litigation costs for Plaintiff in [the Smok case] and related cases involving Plaintiff's trademarks." (Complaint ¶71.)  These are the type of non-restitutionary damages that cannot be recovered under the UCL.

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

42. Moreover, injunctive relief is also not available to Sarieddine as there is no evidence that the complained-of act (use of Ellinger's declaration) is ongoing.

43. Accordingly, Sarieddine's claims under California Business and Professions Code § 17200 and California Business and Professions Code § 17500 fail and are dismissed with prejudice.

44. Due to Alien Visions' priority, all of Sarieddine's infringement and unfair competition claims fail as a matter of law and are dismissed with prejudice.

45. For the same reasons those claims fail, Alien Visions' counterclaims for cancelation are granted.

46. Alien Visions is the prevailing party. It is entitled to its attorney's fees because this is an exceptional case.

Dated: March 14, 2019

**ONE LLP**

By: /s/John E. Lord
John E. Lord

**TAYLOR ENGLISH DUMA LLP**

By: /s/ Amanda G. Hyland
Amanda G. Hyland (*pro hac vice*)
Seth K. Trimble (*pro hac vice*)

*Attorneys for Defendant*
*Alien Visions E-Juice, Inc*

30

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**