John E. Lord (SBN 216111)
Email:  jlord@onellp.com
**ONE LLP**
9301 Wilshire Blvd.
Penthouse Suite
Beverly Hills, CA 90210
Telephone:   (310) 866-5157
Facsimile:    (310) 943-2085

Amanda G. Hyland (admitted *pro hac vice*)
Email:  ahyland@taylorenglish.com
Seth K. Trimble (admitted *pro hac vice*)
Email:  strimble@taylorenglish.com
**TAYLOR ENGLISH DUMA LLP**
1600 Parkwood Circle, Suite 200
Atlanta, GA  30339
Telephone:   (770) 434-6868
Facsimile:    (770) 434-7376

*Counsel for Defendant*
*Alien Visions E-Juice, Inc.*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIKE SARIEDDINE, an individual,<br><br>Plaintiff,<br><br>v.<br><br>ALIEN VISIONS E-JUICE, INC., a California corporation; and DOES 1 through 10, inclusive,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIMS | Case No. 2:18-cv-3658-PA-MAA<br>Hon. Percy Anderson<br><br>**ALIEN VISIONS E-JUICE, INC.'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Date:         April 15, 2019<br>Time:         1:30 p.m.<br>Courtroom:  9A<br><br>Complaint Filed: May 1, 2018 |

**REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT**

01450563-5

# TABLE OF CONTENTS

I. INTRODUCTION ..............................................................................................1

II. ARGUMENT ....................................................................................................2

    A. No reasonable jury could find that Sarieddine has priority. ..................2

    B. Sarieddine disregards Rule 8's notice pleading standard. .....................7

    C. Sarieddine seeks to reinvent Fed. R. Civ. P. 26. ....................................8

    D. Sarieddine's Opposition incorrectly asserts that individuals cannot transfer trademarks in an implied assignment. .......................................9

    E. Sarieddine's Opposition claims that his priority date is his trademark application date, and not his registration date. ...................11

    F. Sarieddine's reliance on his USPTO application and errata sheet is in bad faith. .........................................................................................12

i

**REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT**

01450563-5

# TABLE OF AUTHORITIES

**CASES**

*Accu Pers., Inc. v. Accustaff, Inc.*,
  846 F. Supp. 1191 (D. Del. 1994) ................................................................. 3

*Casual Corner Assocs., Inc. v. Casual Stores of Nev., Inc.*,
  493 F.2d 709 (9th Cir. 1974) ..................................................................... 11

*Chance v. Pac-Tel Teletrac Inc.*,
  242 F.3d 1151 (9th Cir. 2001) ............................................................. 2, 5, 6

*Cornaby's LLC v. Carnet, LLC*,
  2017 U.S. Dist. LEXIS 130716 (D. Utah 2017) ......................................... 5

*Credit One Corp. v. Credit One Fin., Inc.*,
  661 F. Supp. 2d 1134 (C.D. Cal. 2009) ....................................................... 6

*Dep't of Parks & Rec. v. Bazaar Del Mundo, Inc.*,
  448 F.3d 1118 (9th Cir. 2006) ................................................................. 2, 6

*Echo Drain v. Newsted*,
  307 F. Supp. 2d 1116 (C.D. Cal. 2003) ....................................................... 5

*Farmasino, Inc. v. Farmasino Pharms. Co.*,
  2016 U.S. Dist. LEXIS 194703 (C.D. Cal. 2016) .................................... 5, 7

*Glow Indus. v. Lopez*,
  252 F. Supp. 2d 962 (C.D. Cal. 2002) .................................................. 3, 5, 6

*Good Earth Corp. v. M.D. Horton & Assocs.*,
  1998 U.S. App. LEXIS 12572 (9th Cir. 1998) (unpublished) ................... 11

*JS LED Tech. Corp. v. Haiblin Zhang*,
  2014 U.S. Dist. LEXIS 199449 (C.D. Cal. Aug. 7, 2014) ........................... 5

*Long v. Cty. of L.A.*,
  442 F.3d 1178 (9th Cir. 2006) ..................................................................... 4

*Miramar Brands Group, Inc. v. Fonoimoana*,
  2017 U.S. Dist. LEXIS 167502 (C.D. Cal. 2017) ....................................... 7

*New W. Corp. v. NYM Co. of Cal.*,
  595 F.2d 1194 (9th Cir. 1979) ..................................................................... 2

*Newmark Realty Capital, Inc. v. BGC Partners, Inc.*,
  No. 16-cv-01702-BLF (SVK), Docket No. 134 (N.D. Cal. June 15,
  2017) ............................................................................................................ 5

*Optimal Pets, Inc. v. Nutri-Vet, LLC*,
  877 F. Supp. 2d 953 (C.D. Cal. 2012) ..................................................... 3, 7

*Pollution Denim & Co. v. Pollution Clothing Co.*,
  547 F. Supp. 2d 1132 (C.D. Cal. 2007) ....................................................... 3

*Quiksilver, Inc. v. Kymsta Corp.*,
  466 F.3d 749 (9th Cir. 2006) ............................................................................ 6

*Sagana v. Tenorio*,
  384 F.3d 731 (9th Cir. 2004) ............................................................................ 7

*Smith v. Ames Dep't Stores*,
  988 F. Supp. 827 (D.N.J. 1997) ........................................................................ 3

*Taylor v. Thomas,*
  624 Fed. App'x 322 (6th Cir. 2015) (unpublished) ......................................... 10

*Tillamook Cty. Creamery Ass'n v. Tillamook Cheese & Dairy Ass'n*,
  345 F.2d 158 (9th Cir. 1965) ............................................................................ 6

*TMT N. Am., Inc. v. Magic Touch GmbH*,
  124 F.3d 876 (7th Cir. 1997) ................................................................... 10, 11

*Wine Grp., LLC v. L. & R. Wine Co.*,
  2012 U.S. Dist. LEXIS 128576 (E.D. Cal. 2012) ............................................. 5

**STATUTES**

15 U.S.C. § 1065 ...................................................................................................... 11

15 U.S.C. § 15 ............................................................................................................ 1

**OTHER AUTHORITIES**

Thomas McCarthy, McCarthy on Trademarks and Unfair Competition
  § 18:4 (Vol. 3) ................................................................................................... 6

**RULES**

Fed. R. Civ. P 26 ....................................................................................................... 1

Fed. R. Civ. P. 26(a) ................................................................................................. 8

Fed. R. Civ. P. 26(a)(1) ............................................................................................. 8

Fed. R. Civ. P. 56(f) .................................................................................................. 9

Fed. R. Civ. P. 8 .................................................................................................... 1, 7

## I. INTRODUCTION

Alien Visions E-Juice, Inc. ("Alien Visions") moved for summary judgment (Dkt. 62, unredacted at 79) ("Motion") because there is no issue of fact as to its priority over Sarieddine, such that it cannot be liable for trademark infringement and Sarieddine's trademark registrations must be canceled. Sarieddine's only path to opposing Alien Visions' motion is to provide his own, new versions of the applicable Federal Rule and case law. He provides the Court with reinvented law on five major issues in his Opposition to the Motion ("Opposition") (Dkt. 78):

1. Sarieddine's Opposition asks this Court to establish a new test for priority that replaces the "totality of the circumstances" test with exacting requirements.

2. Sarieddine's Opposition disregards Rule 8's requirement of notice pleading and advocates for the application of a heightened pleading requirement.

3. Sarieddine's Opposition asserts that a party is required to produce all documents that either party might theoretically ever rely upon and produce them without being requested to do so far enough in advance of summary judgment such that the other party may review them. Such an assertion requires rewriting Fed. R. Civ. P 26.

4. Sarieddine's Opposition asserts that individuals cannot transfer the trademarks of a business to a commonly-owned successor business without a written chain of title. This argument requires deleting clearly established law that common law trademark assignments may be implied and need not be in writing.

5. Sarieddine's Opposition claims that his priority date is his trademark application date, and not his registration date. This argument requires changing Section 15 of the Lanham Act.

///
///

1
**REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT**

Moreover, Sarieddine failed to substantively dispute the facts set forth in Alien Visions' Statement of Uncontroverted Facts. ("SUF") (Dkt. 78-1). In his Separate Statement, he disputes all but a handful of Alien Visions' facts, and in his explanations, he provides almost exclusively legal arguments and vague evidentiary objections, typically without citing to the record. *Id.* His Separate Statement also violates this Court's Civil Trial Scheduling Order ("Order") (Dkt. 38) because he (1) sets forth legal arguments in his Separate Statement, and (2) failed to identify his evidentiary objections in a separate memorandum. *See* Order p. 6:18 ("No argument shall be set forth in this document); Order p. 7:20-25 ("evidentiary objections are to be argued in a separate memorandum . . . ."). Because Sarieddine has failed to comply with the Order or cite to admissible evidence contradicting Alien Visions' SUF, Alien Visions' stated facts should be taken as undisputed.

## II. ARGUMENT

### A. No reasonable jury could find that Sarieddine has priority.

Sarieddine argues that he has priority by relying on several significant legal distortions. Perhaps most obviously, he casts the priority test as one with exacting, impossible requirements, ignoring the "totality of the circumstances" test altogether.

Determination of priority—for *any* litigant relying on common law rights, as both Alien Visions and Sarieddine ultimately do in this case—is a "totality of the circumstances" analysis, *see, e.g., Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151 (9th Cir. 2001) ("[W]e held that in deciding a question of first use, a court should examine the totality of the parties' activities . . . ."); *id.* at 1159-50 (describing totality of the circumstances tests and noting courts should consider numerous "factors which might distinguish whether a service [or good] has actually been 'rendered in commerce'" including "non-sales activity"); *Dep't of Parks & Rec. v. Bazaar Del Mundo, Inc.*, 448 F.3d 1118, 1126 (9th Cir. 2006) (noting "our 'totality of the circumstances test,'" for use in commerce) (quoting *Chance*, 242 F.3d at 1158); *New*

2
**REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT**

*W. Corp. v. NYM Co. of Cal.*, 595 F.2d 1194, 1200 (9th Cir. 1979) (examining "totality of appellee's acts" to affirm district court's conclusion on summary judgment that appellee had prior use). Thus a court determining priority *may* consider market penetration, but it is not required to do so.[1]

Moreover, Sarieddine misstates the manner in which courts apply market penetration factors. Sarieddine attempts to cast them as series of requirements that *must all be present* (to an unstated and, under Sarieddine's formulation, unreachable degree) for the Court to conclude that a trademark user has achieved priority. *See, e.g.,* Docket No. 78 12:22-13:3, 14:4-5, 15:18-19, 16:17-18, 17:21-22. None of the cases Sarieddine cites (Docket No. 78 13:4-6) supports that position, and indeed, that is not the law. *See, e.g., Optimal Pets, Inc. v. Nutri-Vet, LLC*, 877 F. Supp. 2d 953, 960 (C.D. Cal. 2012) (instructing jury to "consider[] each of the following four factors, giving each factor the weight that you determine to be appropriate under the circumstances of this case"). Market penetration is a matter of degree without any bright-line tests. *See, e.g., Glow Indus. v. Lopez*, 252 F. Supp. 2d 962, 983 (C.D. Cal. 2002) (discussing "extent of market penetration" and factors that "may also be used to assess whether penetration is legally significant"); *Accu Pers., Inc. v. Accustaff, Inc.*, 846 F. Supp. 1191, 1206 (D. Del. 1994) (considering evidence of only two market penetration factors as to which plaintiff submitted evidence); *Smith v. Ames Dep't Stores*, 988 F. Supp. 827, 838 (D.N.J. 1997) ("[T]here are no bright line tests to determine whether or not a product has achieved market penetration[.]").

---

[1] Numerous cases have set forth a priority analysis not based on market penetration. *See, e.g., Pollution Denim & Co. v. Pollution Clothing Co.*, 547 F. Supp. 2d 1132, 1141 (C.D. Cal. 2007). The term "market penetration" appears in only four Ninth Circuit trademark cases. The cases on which Sarieddine relies that discuss market penetration (albeit still not in the way Sarieddine characterizes them) likely have more to do with what the parties choose to argue. *See, e.g., Optimal Pets,* 877 F. Supp. 2d at 957, 958 (noting that defendants sought summary judgment and judgment as matter of law on market penetration).

(Footnote continues on next page.)

Nevertheless, Alien Visions has established priority over Sarieddine under *any* metric, including market penetration. *See, e.g.,* Dkt. 63-1 17:2-4. Importantly, it has done so such that no reasonable jury could find that it has not. *See Long v. Cty. of L.A.*, 442 F.3d 1178 (9th Cir. 2006) (holding that a dispute to a material fact is genuine only if a *reasonable jury* could return a verdict for the non-moving party).

Here, Alien Visions sold almost $4 million of inexpensive[2] products into 50 states and more than 10,000 unique zip codes,[3] all during the very early dates of an emerging market. (Dkt. 63-2 ¶¶ 19-28). It advertised these products extensively in the only available advertising channels. *Id.* ¶¶ 13-16. It has proven that it had hundreds of thousands of visitors to its website, and that its fans posted thousands of times about its products, and these posts were viewed *over one million* times. *Id.* ¶¶ 17-18, 28-32. Mr. Sarieddine complains that these facts are insufficient. This begs the question – under these circumstances, in a case involving $12 products that could not legally be advertised in traditional media, and in an industry that had only existed for a few years – what has Sarieddine provided to show that Alien Visions' volume of sales, degree of consumer awareness, or methods of advertising were inadequate under the totality of these circumstances?

He has provided *nothing*. Opposition 6:5-9.

He does not assert that Alien Visions could have somehow spent more money on advertising but did not. He does not assert that the overall market was large, or for that matter, that there exists any data whatsoever regarding the size of the e-juice market from 2009-2014. He merely cherry-picks data points[4] and characterizes that

---

[2] A typical bottle of e-juice was about $12. *See* Dkt 58-19 ¶ 17 & 58-21.

[3] *See* Trimble Declaration ¶ 15.

[4] Sarieddine complains of low sales and poor growth but has selected the least populated states to skew the results. The Court may take judicial notice of the list of relative state populations issued by the U.S. Census Bureau and summarized in Table 1 here: https://www.census.gov/prod/cen2010/briefs/c2010br-01.pdf. Page 8 is

(Footnote continues on next page.)

4

**REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT**

data as insufficient. His unreasonable characterizations, without anything more, do not create an issue of fact.

Indeed, summary judgment has routinely been granted in the senior user's favor in priority disputes like this one. *See, e.g., Chance,* 242 F.3d at 1160 (affirming district court's summary judgment regarding priority, concluding in particular that plaintiff's evidence of use in commerce was insufficient); *Farmasino, Inc. v. Farmasino Pharms. Co.*, 2016 U.S. Dist. LEXIS 194703, *20 (C.D. Cal. 2016) (finding volume of sales and trade show attendance sufficient to establish priority over registrant on summary judgment); *Echo Drain v. Newsted*, 307 F. Supp. 2d 1116, 1128 (C.D. Cal. 2003) (assessing plaintiff's market penetration and granting summary judgment in defendant's favor); *Wine Grp., LLC v. L. & R. Wine Co.*, 2012 U.S. Dist. LEXIS 128576, *36, *46-63 (E.D. Cal. 2012) (noting market penetration and granting summary judgment on priority of use); *Cornaby's LLC v. Carnet, LLC*, 2017 U.S. Dist. LEXIS 130716, *23 (D. Utah 2017) (granting summary judgment where non-registrant had sales in all fifty states, and there was no evidence that registrant used the mark in any untapped market before non-registrant did so).

Indeed, Alien Visions has provided *better* evidence in this case than what has been accepted to be sufficient as a matter of law. *See, e.g., JS LED Tech. Corp. v. Haiblin Zhang*, 2014 U.S. Dist. LEXIS 199449, *10-11 (C.D. Cal. 2014) (finding sales of $1.5 million sufficient)*; Newmark Realty Capital, Inc. v. BGC Partners, Inc.*, No. 16-cv-01702-BLF, Docket No. 134, p. 14-15 (N.D. Cal. June 15, 2017) (finding "data demonstrates that Defendant likely sufficiently penetrated the national market" based on evidence of deals in thirty-seven states). Unlike the parties in *all* the cases cited by Sarieddine (Dkt. 78 13:4-6), which present highly distinguishable

---

particularly helpful in noting the relative populations across the country, and notably, strongly correlates to the maps provided on pages 4-5, Dkt. 79.

facts, Alien Visions has provided sufficiently specific information to "assist the court in quantifying market penetration," *Glow*, 252 F. Supp. 2d at 984-85.

Sarieddine disingenuously argues that his two 2008 sales—with no other evidence of use until *maybe* mid-2012—are enough to establish his common law rights,[5] but that Alien Visions must show much more. Sarieddine's analysis requires adopting a double standard: He seeks to hold himself to one standard, which does not require market penetration, while holding Alien Visions to a far more onerous one that does. Docket No. 11:24-12:2; 78 10:108-19. That is not the law.

Because Alien Visions established priority over Sarieddine's registration date, the only way he can show he is the senior user in any geographic market is if he can show market penetration in that geographic area.[6] Moreover, he must prove these early dates by clear and convincing evidence because he alleged an April 2013 first use date in his trademark applications. *See* Dkt. 79, 12:1-15.

Contrary to Sarieddine's mischaracterizations of the law, courts have *not* permitted a single sale (or two) standing alone to suffice in establishing priority or a

---

[5] See Dkt. 63-1 pp. 8-9 for a discussion of Sarieddine's 2012 sales. Even accepting *arguendo* that these sales occurred, they do not predate Alien Visions' first use and were separated by over three years from any claimed prior sales. *See Quiksilver, Inc. v. Kymsta Corp.*, 466 F.3d 749, 762 (9th Cir. 2006) ("To be a continuing use, the use must be maintained without interruption.") (quoting *Casual Corner Assocs., Inc. v. Casual Stores of Nev., Inc.*, 493 F.2d 709, 712 (9th Cir. 1974) (holding that even one-year gap of non-use defeated continuous use)); *see also* 15 U.S.C. § 1127 ("[n]onuse for 3 consecutive years shall be prima facie evidence of abandonment.").

[6] *See, e.g., Glow*, 252 F. Supp. 2d at 983-85 ("Although Glow, Inc. is likely to succeed in establishing that . . . it is the senior user of the mark, it must also demonstrate . . . [the] areas in which it has legally sufficient market penetration."); *Credit One Corp. v. Credit One Fin., Inc.*, 661 F. Supp. 2d 1134, 1138 (C.D. Cal. 2009) ("A party asserting common law rights must not only establish that it is the senior user, it must also show that it has 'legally sufficient market penetration' in a certain geographic market to establish those trademark rights."); *see also Tillamook Cty. Creamery Ass'n v. Tillamook Cheese & Dairy Ass'n*, 345 F.2d 158, 160 (9th Cir. 1965) ("[A] trade-mark right is not acquired by registration. A right to a trade-mark stems from prior appropriation and use.").

6
**REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT**

date of first use. *See, e.g., Bazaar Del Mundo*, 448 F.3d at 1126 (holding that use of mark must be continuous and not interrupted to demonstrate priority of use); *Chance*, 242 F.3d at 1157 (noting with approval case law holding that single sale may be sufficient "providing that this shipment or sale has the color of a bona fide transaction and is accompanied or followed by activities which would tend to indicate a continuing effort or intent to continue such use and place the product on the market on a commercial scale within a time demonstrated to be reasonable in the particular trade."); *Optimal Pets*, 877 F. Supp. 2d at 959 ("Trademark rights are not created by a sporadic or casual use; there must be an active and public attempt to establish trade."); *Farmasino,* 2016 U.S. Dist. LEXIS 194703, at *19 (requiring "continuing effort").

Sarieddine mischaracterizes *Miramar Brands Group, Inc. v. Fonoimoana*, 2017 U.S. Dist. LEXIS 167502 (C.D. Cal. 2017), in implying that it holds that a sale evidenced by one witness is sufficient. Dkt. 78 11:28-12:2. To the contrary, that case at best notes parenthetically that testimony of a single witness *may* be sufficient—*if* that witness can attest to facts that are enough to establish use in commerce, such as the licensing and "extensive public use" of the mark *for years* described by multiple declarants in that case. *Miramar,* 2017 U.S. Dist. LEXIS 167502, at *14-21. In short, it is Alien Visions, rather than Sarieddine, that has produced undisputable evidence of prior continuous, bona fide use in commerce, and it is therefore the senior user.

## B. Sarieddine disregards Rule 8's notice pleading standard.

Sarieddine argues that Alien Visions did not use the magic phrase "void ab initio" in its counterclaim and therefore it cannot pursue cancelation on this basis. However, Fed. R. Civ. P. 8 does not require that a party plead its claims in exacting detail; all that is required is a "short and plain statement of the claim showing that the pleader is entitled to relief." "A party need not plead specific legal theories in the

complaint, so long as the other side receives notice as to what is at issue in the case." *Sagana v. Tenorio*, 384 F.3d 731, 736-37 (9th Cir. 2004).

Here, Alien Visions provided Sarieddine with a detailed history of the facts supporting his failure to use his mark in commerce at the time he filed for his trademark application. (Counterclaim, Dkt. 31, ¶¶ 10-16, 21-25). Alien visions then concluded that, based on these facts, Sarieddine's trademark registration was "void." *Id.* ¶ 25. Requiring specific use of the phrase "void ab initio" would impose a pleading burden far in excess of what is required by Rule 8.

### C. Sarieddine seeks to reinvent Fed. R. Civ. P. 26.

Sarieddine claims that, by "dumping" documents on him the hour before Alien Visions filed its motion for summary judgment on March 14, Alien Visions engaged in "sandbagging" and should not be able to use those documents in support of the Motion. Opposition 13:10-11. He does not cite to any rule in support of his claim.

First, Sarieddine failed to seek any documents that were due to him in advance of the summary judgment deadline. Thus, Alien Visions was under no obligation, whatsoever, to produce *anything* to him at that time. Indeed, Alien Visions' prior document production to him was *voluntary*.

The only possible applicable rule would be Fed. R. Civ. P. 26(a), which allows the parties to identify categories and locations of documents upon which they plan to rely in lieu of producing copies. Sarieddine does not allege that Alien Visions violated Rule 26(a), but to the extent he is inferring a violation, Rule 26(a) provides only a *starting* point for discovery and does *not* require the parties to collect all documents either party may deem relevant at some point of the case and produce them months before the close of discovery without being requested. The advisory committee that proposed the original disclosure requirements provides this commentary:

> [I]n cases involving only a few documents the disclosing party may prefer to furnish copies of the documents, but in the more typical case the disclosing

> party will furnish a description of the documents; the other parties, on the basis of that description, will obtain access to the documents they wish to examine through formal or informal discovery requests.

Fed. R. Civ. P. 26(a)(1) advisory committee's note (1993).

Moreover, Sarieddine also has not, because he cannot, show how production of these documents on March 14 prejudiced him. Indeed, if he believed further discovery was necessary to respond to Alien Visions' Motion, he could have moved under Fed. R. Civ. P. 56(d) for additional time to take discovery. He has not done so, nor has he even alleged that time for additional discovery might be helpful to him.

Sarieddine infers some sort of impropriety in the delivery of these documents Motion 13, n. 5. Alien Visions' vendor, Ricoh, uploaded these documents onto a shared site so that Sarieddine could download them. Declaration of Seth Trimble ("Trimble Dec.") ¶¶ 3-4. Sarieddine's counsel, Bruno Tarabichi, waited *nine days* to try to review them and did not notify Alien Visons' counsel of his technical difficulties until March 22. (*Id.* ¶ 5 and Exhibit A thereto). Alien Visions *immediately* contacted Ricoh for help with troubleshooting and put Mr. Tarabichi in touch with Ricoh in an effort to assist him. *Id.* ¶ 6. Thus, to the extent Mr. Tarabichi did not have access to the documents, he cannot argue bad faith on the part of Alien Visions, and he cannot argue prejudice since he waited nine days to attempt accessing them.[7]

### D. Sarieddine's Opposition incorrectly asserts that individuals cannot transfer trademarks in an implied assignment.

---

[7] The documents produced on March 14 were not substantive. Specifically, Mr. Tarabichi complains that he could not open the Third and Fifth productions. The Third production contained AV0001212-190955, which were the original invoices that are summarized in spreadsheets previously provided to Sarieddine on January 7. Trimble Dec. ¶ 7. The Fifth production contained AV0195944-AV0204509, which were screenshots of the e-cigarette forums which were produced to show volume of postings. Additionally, the captures were created by a vendor and not delivered to Alien Visions' counsel until March 5. Trimble Dec. ¶¶ 8-9.

Sarieddine asserts that Alien Visions can only claim priority to the date its current corporate entity was formed in June 2013. Opposition 5:7. He asserts that this is a case involving "certain unidentified individuals" operating under an assumed name and that there is no evidence of a chain of title. Opposition 2:6-9. Sarieddine's argument reinvents the facts and the applicable law.

First, the "certain unidentified individuals" were the owners of Alien Visions, Benjamin and Christiane LaBarre. This is set forth in Mr. LaBarre's declaration provided in connection with the Motion: "With the encouragement of friends, Christiane and I started a business in November 2009 selling the e-juices I had formulated." (Dkt. 58-19) ¶ 6. He then explains what happened next: "We incorporated in 2010 in Oklahoma as Alien Visions E-Juice, Inc." *Id.*

The LaBarres created new entities when they moved to a new state, and each new entity ran an identical business as the prior such that customers were unaware of any behind-the-scenes change. Benjamin LaBarre Declaration ("LaBarre Dec.") ¶¶ 2-5. With each new entity they assigned the goodwill and the common law trademark rights owned by the prior entity. (Dkt. 77-2 ¶¶ 2-5). All of these companies were owned by Mr. LaBarre or Mr. and Mrs. LaBarre, and each entity sold the same product, retained the same employees, and operated in the identical manner as the last, such that to any third party, it would have been impossible to suspect that any corporate change had even occurred. LaBarre Dec. ¶¶ 5-6.

When, as here, an assignment is not in writing, a current trademark owner can prove an historical implied agreement to transfer with strong evidence of conduct manifesting agreement. *TMT N. Am., Inc. v. Magic Touch GmbH*, 124 F.3d 876, 884 (7th Cir. 1997). A case from the Sixth Circuit, *Taylor v. Thomas*, presents similar facts. In *Taylor,* 624 Fed. App'x 322, 324 (6th Cir. 2015) (unpublished), the plaintiff had been the sole owner of a real estate brokerage firm for many years which had used a distinctive Memphis skyline design in advertisements and on its yard signs.

10
**REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT**

She eventually closed the business and joined a new firm, but continued use of the skyline design herself. *Id.* at 324. She testified that she assigned the marks from the real estate firm to herself. *Id.* at 326. The Sixth Circuit held that her uncontradicted testimony and her actions consistent therewith proved, as a matter of law, that she had transferred the trademarks from her former company to herself. *Id.*

Here, Mr. and Mrs. LaBarre have presented uncontroverted testimony that they owned the trademark rights that accrued through their use of the mark ALIEN VISIONS beginning in 2009. They assigned those rights to the Oklahoma company, which was owned by Mr. LaBarre. He then assigned the rights to the Texas entity, and then to the California company. (LaBarre Dec. Dkt. 77-2 ¶¶ 2-5). Thus, the goodwill passed seamlessly from one company to its successor, and the transfer of the trademark rights was implied with each company's formation. The law is clear that in situations such as this one, a written agreement is not necessary. *See, e.g., TMT N. Am., Inc.,* 124 F.3d at 882; Thomas McCarthy, 3 McCarthy on Trademarks and Unfair Competition § 18:4.

### E. Sarieddine's Opposition claims that his priority date is his trademark application date, and not his registration date.

Sarieddine asserts throughout his Opposition that his relevant priority date is May 2, 2013, which is the date he filed his trademark application. Opposition 2:22-24, 3:9-10, 4:14-15, 4:22-25, 5:15-16, 7:5-7, 7:14-16, 9:10-11, 14:12-15. At one point he characterizes the relevant timeframe as 2010-2012. *Id.* 6:3. He provides no authority to support a 2012 or 2013 priority date. *Id.* 4:6-7, 14-15.

He is unable to provide such authority because there is none. To prevail over a junior user (even one that one that is incontestable), 15 U.S.C. § 1065 requires a common law senior user to show continuous use prior to the date of the junior user's registration. *Casual Corner Assocs., Inc. v. Casual Stores of Nev., Inc.*, 493 F.2d 709, 712-13 (9th Cir. 1974); *Good Earth Corp. v. M.D. Horton & Assocs.*, 1998 U.S. App.

11
**REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT**

LEXIS 12572, *4-5 (9th Cir. 1998) (unpublished) ("only those common law rights acquired before the trademark was registered may be preserved"). Thus, here, the relevant date for purposes of priority is Sarieddine's registration date, which is April 22, 2014. To the extent his brief repeatedly cites date from the time period ending in May 2013, these statistics present only partial data on Alien Visions' market penetration.

### F. Sarieddine's reliance on his USPTO application and errata sheet is in bad faith.

Sarieddine testified, unequivocally, that he created the Alien logo in 2013 in China, and that the logo was first used on products that he did not receive or sell until months later. *See* Dkt. 79 p. 9:5-12. He now attempts to rely on his materially altered errata sheet to create an issue of fact. Opposition 9:22-27. Alien Visions will fully address the impropriety of this reliance in a forthcoming Motion to Strike.

Additionally, Sarieddine represents to this Court in his sworn declaration that his May 2013 trademark application contained an image of his product bearing the Alien logo. Opposition 9:7-9; Dkt. 78-2 ¶ 4. It did not. Specifically, as Exhibit A to his declaration, he attaches the pages he claims to be the specimen he submitted to the USPTO on May 2, 2013, along with a link to the USPTO file history. *Id*. The fourth page of that Exhibit A shows an image of a product bearing the ALIEN VAPE logo. *Id*. ***Contrary to his declaration, the fourth page was never part of his original application. Sarieddine added the fourth image to his Exhibit A to mislead the Court.***

Indeed, upon receipt of his original specimen (which consisted of just the first three pages of his Exhibit A), the USPTO issued an Office Action noting that his specimen and his application did not match because ***none of the three images comprising his specimen had the Alien head logo on it,*** and Sarieddine submitted a corrected specimen on November 18, 2013. This new specimen can be viewed here:

12
**REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT**

01450563-5

http://tsdr.uspto.gov/documentviewer?caseId=sn85921161&docId=SPE20131119190750#docIndex=18&page=1. The USPTO file history, as provided to Alien Visions by Sarieddine, is attached for the Court's review. Trimble Dec ¶ 11-14.

Dated: April 1, 2019        **ONE LLP**

By: /s/John E. Lord
    John E. Lord

**TAYLOR ENGLISH DUMA LLP**

By: /s/ Amanda G. Hyland
    Amanda G. Hyland (admitted *pro hac vice*)
    Seth K. Trimble (admitted *pro hac vice*)

*Attorneys for Defendant*
*Alien Visions E-Juice, Inc.*

13
**REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT**